STATE OF NORTH CAROLINA v. DANNY ALLEN PARTON

No. 81

(Filed 5 May 1981)

### 1. Constitutional Law § 45— no right by defendant to act as co-counsel

While defendant had the right to appear either *in propria persona* or by counsel, defendant had no Sixth Amendment right to serve as co-counsel with his court-appointed attorney. G.S. 1-11; G.S. 15A-1242.

### 2. Criminal Law § 15.1— pretrial publicity—motion for change of venue

Defendant's right to due process was not violated by the trial court's denial of his motion for change of venue of his trial for two murders on the ground of prejudicial pretrial publicity, including a newspaper's continued reference to the fact that the bodies of two victims were found in shallow graves, the possibility that defendant killed as many as eight women, and the fact that police were engaged in searches for the six additional bodies, where defendant himself initially confessed to having murdered eight women and having buried their bodies in shallow graves in a secluded wooded area, the newspaper articles were factual accounts of defendant's confessed actions and the evidence uncovered by the law enforcement officials investigating the crimes, and the newspaper's coverage was no more inflammatory or prejudicial than any coverage likely to be found in any jurisdiction to which the trial might be moved.

State v. Parton

3. **Indictment and Warrant § 8.4— motion to elect between charges—delay of ruling until trial**

The trial court did not err in delaying until trial its decision on defendant's motion to require the State to elect which of two first degree murder charges against defendant to call first for trial where the State had repeatedly informed defendant that it intended to call both murder charges to trial during the 3 December 1979 session of court; after the State filed its motion to consolidate the two charges on 23 October 1979, defendant was aware of the possibility that both charges would be called to trial on 3 December 1979 and should have been prepared for that eventuality; and the trial judge clearly warned defendant three days before trial that he should be prepared to defend either or both of the charges at the opening of the court session.

4. **Criminal Law § 92.4— consolidation of murder charges for trial**

Two murder charges against defendant were sufficiently similar in time, place and circumstances so as to justify their consolidation for trial, although the killing of one victim occurred approximately 30 days before the killing of the second victim, where both women died of manual strangulation and were buried approximately one-eighth of a mile apart in a secluded wooded area; defendant admitted in the same confession that he committed both killings and led law officers to both graves at the same time; defendant was assisted by the same individual in disposing of both bodies; the witnesses to be presented in both trials were substantially the same; and it would have been impractical and nearly impossible to have presented evidence of the events surrounding one killing without also presenting evidence of the other killing.

5. **Constitutional Law § 31— indigent defendant—denial of funds for private investigator**

The constitutional and statutory rights of an indigent defendant charged with two murders were not violated by the trial court's denial of his motion requesting funds with which to hire an investigator to research the backgrounds and characters of the State's witnesses and the two victims where there was nothing in the record to show that such an investigation would require any unique skill or unduly burdensome time requirements which would have prevented defense counsel from adequately conducting the investigation himself, and the record showed that defendant was able competently to cross-examine the State's witnesses on all the issues mentioned in his motion requesting an investigator and was able to investigate fully the characters of all the individuals at issue. G.S. 7A-450(b); G.S. 7A-454.

6. **Criminal Law § 91.6— denial of continuance—no violation of constitutional rights**

Defendant's rights to the effective assistance of counsel, due process of law, and confrontation of the witnesses presented against him were not violated by the denial of his motion for continuance because defendant was charged with two counts of murder, three counts of first degree rape, and one count of conspiracy to commit rape and defendant was available for consultation with his attorney for only 77 of the 135 days between his arrest and trial where defendant was only placed on trial for the two murder charges; defense counsel could have utilized the entire 135 days in preparation of those portions

State v. Parton

of the defense which did not require consultation with defendant; the offenses of which defendant was charged were interrelated and involved many of the same witnesses; and the investigation and preparation of a defense on one charge overlapped that for the other charges.

**7. Criminal Law § 75.15— admissibility of confession—intoxicated defendant**

The fact that defendant was intoxicated at the time of his confession does not preclude the conclusion that defendant's statements were freely and voluntarily given, and an inculpatory statement is admissible unless the defendant was so intoxicated as to be unconscious of the meaning of his words.

**8. Criminal Law § 75.15— admissibility of confession—intoxicated defendant**

Defendant's statements to law officers subsequent to his arrest for disorderly intoxication in Florida were not inadmissible because of defendant's intoxication where the trial court conducted a hearing and found that defendant was not unconscious and did not exhibit conduct amounting to a mania as a result of the use of alcohol, drugs, or both, and the court's findings were supported by the evidence presented at the hearing, including testimony by the arresting officer that, although he believed defendant to be intoxicated at the time of his arrest, defendant was not staggering and appeared coherent, and that after being advised of his constitutional rights and stating that he understood them, defendant told the officer that he had not come to the police station to be "hassled" but wished to confess to a murder.

**9. Juror § 7.14— peremptory challenge of juror after acceptance by State and defendant**

The trial court did not err in allowing the State to challenge peremptorily a juror after his acceptance by both the State and defendant where it appeared upon re-examination of the juror that he had discussed his opposition to the dealth penalty with other selected jurors in the jury room in violation of the trial judge's instructions not to discuss the case and that his opposition to the death penalty was not fully expressed at his initial examination, and where the juror stated upon re-examination that he would rather not be put to the test of having to decide whether to recommend the death penalty and repeatedly requested to be excused because of his opinion on the death penalty. G.S. 15A-1214(g).

**10. Criminal Law §§ 34.3, 128.2— murder trial—reference to possibility defendant killed other persons—mistrial denied**

In this prosecution upon two charges of first degree murder, the trial court did not err in denying defendant's motion for a mistrial because of unresponsive answers by two State's witnesses which referred to the possibility that defendant had killed other persons where the trial court found that neither the State nor the witnesses were attempting intentionally to prejudice the jury by these remarks; the trial court promptly instructed the jury to ignore such statements and offered to instruct the jury to disregard such evidence if defendant so desired; and an expert defense witness testified without objection that during his interrogation of defendant while defendant was under the influence of Sodium Amytal, he asked defendant why he said

that he had killed more than two people, and that defendant responded that he probably wanted to be caught and punished.

**11. Criminal §§ 142.3, 145.5— restitution as condition for parole or work release**

A requirement that a defendant pay restitution under G.S. 148-33.2(c) or G.S. 148-57.1(c) as a condition of obtaining work release or parole is not inherently unconstitutional. Furthermore, defendant's challenge to an order that he pay $20,000 into each of the estates of two murder victims before he may be considered eligible for parole or work release on the ground that the order discriminates against him as an indigent in violation of his right to equal protection may be considered only after a review of his financial and other circumstances at the time he becomes eligible for parole or work release privileges.

Justice MEYER did not participate in the consideration or decision of this case.

DEFENDANT appeals from judgment of *Lewis, J.,* entered at the 3 December 1979 Criminal Session of Superior Court, McDOWELL County. This case was argued as No. 9, Fall Term, 1980.

Defendant was tried upon indictments, proper in form, charging him with first degree murder of Kathy Roxanna Mosley on 24 May 1979 and first degree murder of Mary Kathryn Carnes on 19 June 1979. The jury found defendant guilty of second degree murder for the killing of Kathy Roxanna Mosley and first degree murder for the killing of Kathryn Carnes. From the trial court's judgment sentencing him to two terms of life imprisonment, to be served consecutively, defendant appeals as a matter of right pursuant to G.S. 7A-27(a).

State's witness Henry Burnette testified at trial that he was present at defendant Danny Parton's residence in the North Cove section of McDowell County on 24 May 1979, accompanied by defendant, Kathy Mosley, and Kay Wright. He stated that while he was in a barn next to defendant's house, defendant came to him and confessed that he had just killed Kathy Mosley. Mr. Burnette followed defendant into the house and observed Ms. Mosley's body lying upon the bed. He and Kay Wright helped defendant place the body in Ms. Wright's car, drive to a secluded wooded area, dig a grave, and bury the body.

Henry Burnette further testified that he arrived at defendant's residence at approximately 6:00 p.m. on 19 June 1979 and

found Kathryn Carnes present at the house. On the following day Burnette accompanied defendant and Ms. Carnes to Hunnicutt Creek in McDowell County, ostensibly to go fishing. Defendant parked the truck in which they were riding approximately one-half mile from the grave of Kathy Mosley. He informed Burnette that he was going to kill Kathryn Carnes and that they were going to dig her grave before they killed her. Ms. Carnes watched while the two men dug a grave. Burnette stated that he then walked into the woods but returned to the grave site when defendant called him. Upon his return he observed Ms. Carnes lying on the ground with a rope tied around her neck, gasping for air. Defendant then pulled the rope tighter and choked her until she died. The two men buried the body, after which defendant told Burnette that a man had paid him $4,000.00 to kill Ms. Carnes.

Further evidence presented by the State tended to show that at approximately 2:47 a.m. on 18 July 1979, defendant was arrested for disorderly intoxication in Bartow, Florida. He was immediately advised of his constitutional rights. Upon his arrival at the Police Department, defendant stated that he wished to confess to the murder of Kathy Mosley and advised the Florida police to contact officials in Gastonia, North Carolina. Defendant then confessed that he had killed both Kathy Mosley and Kathryn Carnes and had buried their bodies in a wooded area in McDowell County. Defendant repeated his confession at approximately 4:30 p.m. on 18 July 1979 to Sergeant Reid of the Gaston County Police Department, who had been summoned to Florida by the Bartow Police Department. Upon his return to North Carolina, defendant showed law enforcement officers where he had buried the bodies, and both bodies were uncovered in the locations indicated. State Medical Examiner Dr. Page Hudson identified the bodies as those of Kathy Mosley and Kathryn Carnes. He testified that both women died of strangulation.

Defendant testified in his own behalf, admitting that he killed Ms. Mosley but denying any participation in the murder of Kathryn Carnes. He stated that on 24 May 1979 Kathy Mosley came to his house, whereupon the two began to argue. Ms. Mosley had been living with defendant intermittently for two and one-half years prior to this time. During the argument Ms. Mosley slapped defendant and defendant reciprocated. He testified that he could not recall his exact actions in killing Ms. Mosley, but

that he remembered being wet with sweat and seeing her lying dead on the bed.

Defendant further stated that he remembered none of the events surrounding the death of Kathryn Carnes. He recalled that he left to go fishing with Ms. Carnes and Henry Burnette on 19 or 20 June 1979, but remembered nothing after leaving his residence that day. He claimed to have been drinking a great deal of alcohol and ingesting a number of drugs on that day. He did not recall how he knew the exact location in which Ms. Carnes' body was buried.

Dr. Rollins, a physician at Dorothea Dix Hospital and a psychiatric consultant at Central Prison, testified that he injected defendant with the drug Sodium Amytal on 21 November 1979 at Dorothea Dix Hospital. Sodium Amytal is an anesthetic drug administered for the purpose of relaxing the conscious mind of the patient and creating a mental state which encourages the patient to answer questions truthfully. Under the influence of this drug defendant again admitted killing Ms. Mosley but denied any participation in the killing of Ms. Carnes. Upon further interrogation by Dr. Rollins, he stated that Henry Burnette killed Ms. Carnes. Defendant related that he had consumed a large amount of alcohol and drugs during the period of time surrounding Ms. Carnes' death. Dr. Rollins testified on cross-examination that individuals who are excessive alcohol users may be tolerant to Sodium Amytal and less likely to succumb to the anesthetic effects of the drug. He stated that it was possible for one to tell a falsehood under the influence of the drug.

The jury found defendant guilty of second degree murder for the killing of Kathy Mosley and first degree murder for the killing of Kathryn Carnes. The jury could not unanimously agree within a reasonable time whether to impose the death penalty or a sentence of life imprisonment for defendant's first degree murder conviction, therefore the judge imposed a sentence of life imprisonment pursuant to G.S. 15A-2000(b). Defendant also received a sentence of life imprisonment for the second degree murder conviction, the terms to be served consecutively.

Other facts pertinent to the decision will be set forth in the opinion below.

*Charles E. Burgin for defendant.*

*Attorney General Rufus L. Edmisten by Assistant Attorney General Thomas B. Wood for the State.*

COPELAND, Justice.

Defendant argues eleven assignments of error on appeal. We have carefully considered each assignment and conclude that the trial court committed no error which would entitle defendant to a new trial.

[1] Defendant first contends that the trial court erred in denying defendant's motion to participate as co-counsel at his trial, in violation of his constitutional right to represent himself. It has been established that the Sixth Amendment to the United States Constitution, made applicable to the states by the due process clause of the Fourteenth Amendment, guarantees the accused in a state criminal action the right to proceed without counsel and represent himself at trial when he voluntarily and knowingly elects to do so. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed. 2d 562 (1975); *State v. House*, 295 N.C. 189, 244 S.E. 2d 654 (1978); *State v. Robinson*, 290 N.C. 56, 224 S.E. 2d 174 (1976); *State v. Mems*, 281 N.C. 658, 190 S.E. 2d 164 (1972). Defendant urges us to interpret the holding of the United States Supreme Court in *Faretta v. California, supra,* as establishing not only the right to represent oneself in a criminal action, but also as establishing the right of an accused to represent himself as co-counsel with an attorney. This Court has previously held in *State v. House, supra,* that the *Faretta* decision extends only to an accused's right to forego all assistance of counsel and does not create a right to be simultaneously represented by himself and an attorney. It has long been established in this jurisdiction that a party has the right to appear *in propria persona* or, in the alternative, by counsel. There is no right to appear both *in propria persona* and by counsel. G.S. 1-11; G.S. 15A-1242; *State v. Phillip*, 261 N.C. 263, 134 S.E. 2d 386 (1964); *New Hanover County v. Sidbury*, 225 N.C. 679, 36 S.E. 2d 242 (1945); *McClamroch v. Colonial Ice Co.*, 217 N.C. 106, 6 S.E. 2d 850 (1940). *See also U.S. v. Lang*, 527 F. 2d 1264 (4th Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1127, 47 L.Ed. 2d 328 (1976); *Moorefield v. Garrison*, 464 F. Supp. 892 (W.D.N.C. 1979). The vast majority of jurisdictions which have interpreted the *Faretta* decision have also refused to extend the

holding to include a sixth amendment right for an accused to serve as co-counsel with his attorney. *United States v. Daniels,* 572 F. 2d 535 (5th Cir. 1978); *United States v. Bowdatch,* 561 F. 2d 1160 (5th Cir. 1977); *United States v. Cyphers,* 556 F. 2d 630 (2d Cir. 1977), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed. 2d 1070 (1977); *People v. Wheeler,* 68 Cal. App. 3d 1056, 137 Cal. Rptr. 791 (1977); *People v. Culhane,* 45 N.Y. 2d 757, 380 N.E. 2d 315, 408 N.Y.S. 2d 489 (1978), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 723, 58 L.Ed. 2d 706 (1979). Consequently, we find that since defendant in this case elected to retain the services of his court-appointed attorney, the trial court properly denied defendant's motion to participate as co-counsel at the trial, and defendant's allegations to the contrary are without merit.

[2] By his second assignment of error, defendant argues that the trial court violated his constitutional right to due process in denying his motion for change of venue on the ground of prejudicial pretrial publicity. Defendant complains that several articles appearing in *The McDowell News* over the period from 20 July 1979 to 20 August 1979 gave such biased and inflammatory accounts of the events surrounding the offenses of which he was charged that it was impossible for him to obtain a fair trial by an impartial jury in McDowell County. Defendant notes as particularly inflammatory the newspaper's continued reference to the fact that the bodies of Kathy Mosley and Kathryn Carnes were found in shallow graves, the possibility that defendant killed as many as eight women, and the fact that police were engaged in searches for the six additional bodies.

A motion for change of venue is addressed to the sound discretion of the trial judge and the ruling thereon will not be disturbed on appeal absent an abuse of that discretion. *State v. Faircloth,* 297 N.C. 101, 253 S.E. 2d 890 (1979); *State v. Matthews,* 295 N.C. 265, 245 S.E. 2d 727 (1978), *cert. denied,* 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed. 2d 90 (1979); *State v. Harrill,* 289 N.C. 186, 221 S.E. 2d 325, *death sentence vacated,* 428 U.S. 904, 96 S.Ct. 3212, 49 L.Ed. 2d 1211 (1976). The burden is on the defendant to show that the pretrial publicity was so prejudicial that he could not obtain a fair trial in the county in which the offense was committed. *State v. Faircloth, supra; State v. Boykin,* 291 N.C. 264, 229 S.E. 2d 914 (1976). We find that defendant in this case failed to meet his burden to show that he could not obtain a fair trial in

State v. Parton

McDowell County, and the trial judge did not abuse his discretion in denying defendant's motion for change of venue.

The newspaper articles at issue were factual accounts of defendant's confessed actions and the evidence uncovered by the law enforcement officials investigating the crimes. None of the articles seem calculated to inflame the public. Defendant himself initially confessed to having murdered eight women and having buried their bodies in shallow graves in a secluded wooded area of McDowell County. He cannot complain that the newspaper chose to print the contents of his confession and the facts of the subsequent police investigation. The newspaper's coverage was within the bounds of propriety and no more inflammatory or prejudicial than any coverage likely to be found in any jurisdiction to which the trial might be moved. *See State v. Tilley*, 292 N.C. 132, 232 S.E. 2d 433 (1977); *State v. Brower*, 289 N.C. 644, 224 S.E. 2d 551 (1976); *State v. Thompson*, 287 N.C. 303, 214 S.E. 2d 742 (1975). In addition, we note that the record of the proceedings below fails to show that defendant exhausted his peremptory challenges during the selection of the jury, or that defendant was forced to accept any juror which he found objectionable. There is nothing to indicate that any juror held an opinion prior to the trial that would prevent him or her from acting in an impartial manner. Under such circumstances we have held that a defendant has failed to show that he was prejudiced by pretrial publicity. *State v. Tilley, supra; State v. Brower, supra; State v. Harrill, supra.* The trial judge committed no prejudicial error in denying defendant's motion for change of venue, and defendant's assignment of error is overruled.

[3] Defendant next argues that the trial court erred in delaying until trial its decision on defendant's motion to require the State to elect which of the first degree murder charges against defendant to first call for trial. Defendant initially moved to require the State to elect on 17 October 1979. The trial court deferred ruling on the motion until defendant's arraignment on 23 October 1979, at which time defendant again moved that the State be required to elect which of the capital cases would be first called to trial. The State advised the Court that it intended to try both murder charges at the 3 December 1979 Criminal Session of Superior Court in McDowell County, but did not indicate which of the charges it would call first. The State also moved at this time to

consolidate the two charges for trial. The trial court held a hearing on the State's motion to consolidate on 29 November 1979, at which time the trial judge informed defendant's counsel that he should be prepared to try both cases at the opening of court on 3 December 1979. The state's motion to consolidate the two murder charges was granted 3 December 1979.

Defendant claims that the trial court's delay in ruling on his motion to require the State to elect deprived him of an opportunity to adequately prepare his defense on either charge. We disagree. The State repeatedly informed defendant that it intended to call both murder charges to trial during the 3 December 1979 session of court. After the State filed its motion to consolidate the two charges on 23 October 1979, defendant was aware of the possibility that both charges would be called to trial on 3 December 1979 and should have been prepared for that eventuality. In addition, the trial judge clearly warned defendant three days before trial that he should be prepared to defend either charge, or both, at the opening of the court session. Consequently, we hold that the trial court in this case committed no prejudicial error in delaying its ruling on defendant's motion to elect until the time of trial.

[4] By his fourth and tenth assignments of error defendant maintains that the trial court erred in granting the State's motion to consolidate the two murder charges for trial and in denying defendant's motion for mistrial on the ground that the charges were improperly consolidated. G.S. 15A-926(a) authorizes the consolidation of charges and provides as follows:

> "Two or more offenses may be joined in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan."

This Court has repeatedly held that in deciding whether two or more offenses should be joined for trial, the trial court must determine whether the offenses are "*so separate in time and place* and *so distinct in circumstances* as to render the consolidation unjust and prejudicial to defendant." *State v. Johnson*, 280 N.C. 700, 704, 187 S.E. 2d 98, 101 (1972). Thus, there must be some type of "transactional connection" between the offenses con-

solidated for trial. *State v. Powell,* 297 N.C. 419, 255 S.E. 2d 154 (1979); *State v. Greene,* 294 N.C. 418, 241 S.E. 2d 662 (1978); *State v. Anderson,* 281 N.C. 261, 188 S.E. 2d 336 (1972).

We find the murder charges involved in the present action sufficiently similar in time, place, and circumstances to justify consolidation for trial. Although the killing of Kathy Mosley occurred approximately thirty days before the killing of Kathryn Carnes, the circumstances of each killing were remarkably similar. Both women died of manual strangulation and were buried in shallow graves in a secluded wooded area of McDowell County, approximately one-eighth of a mile apart. Defendant admitted to having committed both killings in the same confession, and led law enforcement officers to both graves at the same time. Defendant was assisted by the same individual, Henry Burnette, in disposing of both bodies. The witnesses to be presented in both trials were substantially the same. As pointed out by the trial court, it would be impractical and nearly impossible to present evidence of the events surrounding one killing without also presenting evidence of the other killing. Defendant has failed to show that the consolidation of the two offenses unjustly hindered him or deprived him of his ability to present a defense on either charge. Consequently, we hold that the trial court did not abuse its discretion in granting the State's motion to consolidate the two murder charges for trial and defendant's assignments of error are overruled.

[5] Under his fifth assignment of error, defendant argues that the trial court erred in denying his motion requesting funds with which to hire an investigator. Defendant alleged that the services of an investigator were necessary to enable him to fully research the background and characters of State's witnesses Kay Wright and Henry Burnette and to investigate the prior relationship among these two witnesses, defendant, and the victims. Without this assistance, defendant complains that he was unable to gather enough information to competently cross-examine the State's witnesses at trial, in violation of his sixth amendment due process right to the effective assistance of counsel, his fourteenth amendment right to equal protection of the laws, and his statutory right as an indigent under G.S. 7A-450(b) to be provided ". . . with counsel and the other necessary expenses of representation."

It is well recognized that in order to comply with an indigent defendant's constitutional rights to effective assistance of counsel and equal protection under the laws, the State must provide the basic tools required to prepare an adequate defense at trial or on appeal. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 779 (1963); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *Mason v. State of Arizona,* 504 F. 2d 1345 (9th Cir. 1974), *cert. denied,* 420 U.S. 936, 95 S.Ct. 1145, 43 L.Ed. 2d 412 (1975); *State v. Tatum,* 291 N.C. 73, 229 S.E. 2d 562 (1976). However, it is equally well established that the constitution does not require the State to furnish a defendant with a particular service simply because the service might be of some benefit to his defense. *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed. 2d 341 (1974). *See* Annot., 34 A.L.R. 3d 1256 (1970). Whether investigative assistance is constitutionally mandated must be determined after consideration of the facts of the case; defendant must demonstrate that the State's failure to provide funds with which to hire an investigator substantially prejudiced his ability to obtain a fair trial. *Mason v. State of Arizona, supra. See also United States Ex Rel Smith v. Baldi,* 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549 (1953). Our Court has held that to deny an indigent defendant the assistance of a state-paid investigator does not, *ipso facto,* constitute a denial of equal protection of the laws, even though such an investigator might be available under the provisions of G.S. 7A-468 to indigent defendants represented by public defenders and is available to defendants who are able to pay for the investigative services. *State v. Gray,* 292 N.C. 270, 233 S.E. 2d 905 (1977); *State v. Montgomery,* 291 N.C. 91, 229 S.E. 2d 572 (1976); *State v. Tatum, supra.* Likewise, this Court has interpreted our state statutes, G.S. 7A-450(b) and 7A-454,[1] as requiring that investigative assistance be provided only after a showing by defendant "that there is a reasonable likelihood that it will materially assist the defendant in the preparation of his defense

---

1. G.S. 7A-450(b) provides as follows:

"Whenever a person, under the standards and procedures set out in this subchapter, is determined to be an indigent person entitled to counsel, it is the responsibility of the State to provide him with counsel and the other necessary expenses of representation. The professional relationship of counsel so provided to the indigent person he represents is the same as if counsel had been privately retained by the indigent person."

State v. Parton

or that without such help it is probable that defendant will not receive a fair trial." *State v. Gray*, 292 N.C. at 278, 233 S.E. 2d at 911. *See also State v. Easterling*, 300 N.C. 594, 268 S.E. 2d 800 (1980); *State v. Tatum, supra*. The decision whether to provide a defendant with an investigator under the provisions of those statutes is. a matter within the discretion of the trial judge and will not be disturbed on appeal absent an abuse of that discretion. *State v. Gray, supra; State v. Montgomery, supra; State v. Tatum, supra*. Thus, there is no constitutional or statutory requirement that the State provide an indigent defendant with investigative assistance merely upon the defendant's request.

We find that defendant in the case *sub judice* failed to demonstrate the necessity for the assistance of an investigator to the extent that his constitutional or statutory rights were violated by the trial court's refusal to grant his motion requesting such assistance. There is nothing to show that an investigation into the background and characters of the State's witnesses and the two victims would require any unique skill or unduly burdensome time requirements that would prevent defense counsel from adequately conducting the investigation himself. Kay Wright was never called by the State as a witness, therefore defendant's contention that he was deprived of the information necessary to effectively cross-examine Ms. Wright was rendered moot and any merit to his contentions was made nonprejudicial. It was noted during the hearing on defendant's motion that defense counsel was a longtime resident of McDowell County, thus we find nothing that would prevent counsel from being able to fully investigate State's witness Henry Burnette, also a McDowell County resident. It is evident from the record that defendant was able to competently cross-examine Burnette on all the issues mentioned in his motion requesting an investigator. In addition the testimony of other defense witnesses indicates that defendant was able to fully investigate the characters of all the individuals at issue. Consequently, we hold that the trial court did not violate any of defendant's constitutional or statutory rights in denying his motion for funds with which to hire an investigator, and defendant's contentions to the contrary are without merit.

G.S. 7A-454 states:

"The court, in its discretion, may approve a fee for the service of an expert witness who testifies for an indigent person, and shall approve reimbursement for the necessary expenses of counsel. Fees and expenses accrued under this section shall be paid by the State."

[6]  We likewise find no merit in defendant's argument under assignment number six that the trial court erred in denying his motion to continue filed 29 November 1979. Defendant argues that a delay of trial was necessary to allow him to prepare an adequate defense, since of the 135 days between his arrest and the date of trial, defendant was confined at Dorothea Dix Hospital in Raleigh, North Carolina for fifty-eight days, leaving only seventy-seven days during which defendant was available for consultation with his attorney. Defendant thus complains that the denial of his motion violated his constitutional rights to the effective assistance of counsel, due process of law, and confrontation of the witnesses presented against him.

A motion for continuance is ordinarily addressed to the sound discretion of the trial judge and not subject to review on appeal absent an abuse of that discretion. However, when the motion is based on a right guaranteed by the United States or North Carolina Constitutions, the question presented is a reviewable question of law. *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied*, --- U.S. ---, 100 S.Ct. 3050, 65 L.Ed. 2d 1137 (1980); *State v. Abernathy*, 295 N.C. 147, 244 S.E. 2d 373 (1978); *State v. Harris*, 290 N.C. 681, 228 S.E. 2d 437 (1976). Implicit in the constitutional guarantees of the effective assistance of counsel and the right to confront witnesses is the right to a reasonable time in which to investigate and prepare a defense. However, no set length of time is guaranteed and whether a defendant is denied due process of law by a trial court's denial of his motion to continue must be determined after consideration of the circumstances in each case. *State v. Mason*, 295 N.C. 584, 248 S.E. 2d 241 (1978), *cert. denied*, 440 U.S. 984, 99 S.Ct. 1797, 60 L.Ed. 2d 246 (1979); *State v. McFadden*, 292 N.C. 609, 234 S.E. 2d 742 (1977); *State v. Harris, supra.*

We find that under the facts of the present case, the trial court acted properly in denying defendant's motion for continuance. Defendant maintains that since he was charged with two counts of murder, three counts of first-degree rape, and one count of conspiracy to commit rape, a period of seventy-seven days was insufficient to allow him to prepare his defense since he could devote only thirteen days to each offense charged. We disagree. Although defendant was available to consult with counsel for only seventy-seven of the 135 days between arrest and trial, defense

counsel could have utilized the entire 135 days in preparation of those portions of the defense which did not require consultation with defendant. Furthermore, the offenses of which defendant was charged were interrelated, involving many of the same witnesses. The investigation and preparation of a defense on one charge would overlap with that for the other charges, therefore defendant's contention that he was allowed only thirteen days to prepare each offense is without merit. As a matter of fact, defendant was only placed on trial at this term for the two murder charges. Defendant has failed to show that he was denied ample time to prepare and present his defense. .

Defendant next maintains that the trial court erred in denying his motion to suppress his statements made to law enforcement officers subsequent to his arrest for disorderly intoxication in Bartow, Florida at 2:47 a.m. on 18 July 1979. It is his position that, because of his intoxication and illness at the time of his arrest, he was unable to comprehend the reading of his constitutional rights and incapable of intelligently waiving these rights, rendering his subsequent statement inadmissible under the holding in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

[7] When the State offers a defendant's confession into evidence and defendant objects, the trial court must conduct a *voir dire* hearing to determine its admissibility. *State v. Jones*, 294 N.C. 642, 243 S.E. 2d 118 (1978). The trial judge's finding of fact that an inculpatory statement was freely and voluntarily given is conclusive on appeal when supported by competent evidence. *State v. Horton*, 299 N.C. 690, 263 S.E. 2d 745 (1980); *State v. Johnson*, 298 N.C. 355, 259 S.E. 2d 752 (1979); *State v. Barfield, supra.* The fact that defendant was intoxicated at the time of his confession does not preclude the conclusion that defendant's statements were freely and voluntarily given. An inculpatory statement is admissible unless the defendant is so intoxicated as to be unconscious of the meaning of his words. *State v. McClure*, 280 N.C. 288, 185 S.E. 2d 693 (1972); *State v. Logner*, 266 N.C. 238, 145 S.E. 2d 867, *cert. denied*, 384 U.S. 1013, 86 S.Ct. 1983, 16 L.Ed. 2d 1032 (1966).

[8] In the present case, the trial court conducted a hearing and found no evidence to support the contention that defendant was unconscious or exhibiting conduct amounting to a mania as a

result of the use of alcohol, drugs, or both. The court therefore concluded that defendant's statements were voluntarily made. We find the trial court's findings supported by the evidence presented at the hearing. Robert Qualar, the officer who arrested defendant at 2:47 a.m. on 18 July 1979, testified that although he believed defendant to be intoxicated at the time of his arrest, defendant was not staggering and appeared coherent. After being advised of his constitutional rights and stating that he understood them, defendant told Officer Qualar that he had not come to the police station to be "hassled," but that he wished to confess to a murder. This statement was not made in response to police interrogation; it appeared totally unsolicited and voluntary. After perusal of all the evidence presented at the hearing we find that the trial judge properly found a free, voluntary waiver of defendant's rights consistent with the requirements of *Miranda v. Arizona, supra,* as reiterated by this Court in *State v. Connley,* 297 N.C. 584, 256 S.E. 2d 234, *cert. denied,* 444 U.S. 954, 100 S.Ct. 433, 62 L.Ed. 327 (1979). Since we have found defendant's initial confession admissible, it is unnecessary to address defendant's argument that his second, third, and fourth confessions, given at approximately 6:00 a.m., 4:30 p.m., and 6:00 p.m. on 18 July 1979, were "tainted" by the constitutionally defective initial statement and therefore inadmissible. *See Miranda v. Arizona, supra, Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed. 2d 171 (1963). It is uncontested that each of the subsequent statements was preceded by lengthy readings of defendant's *Miranda* warnings, after which defendant stated that he understood his rights and chose to waive them. Defendant's seventh assignment of error is overruled.

[9] By his eighth assignment of error, defendant argues that the trial court erred in allowing the State to peremptorily challenge a juror, Mr. Lonon, after his acceptance by both the State and defendant. G.S. 15A-1214(g) provides that a party who has not exhausted his peremptory challenges may challenge a juror after he has been accepted by a party, but before the jury is impaneled, if "it is discovered that the juror has made an incorrect statement during *voir dire* or that some other good reason exists." The decision whether to reopen examination of a juror previously accepted by both the State and defendant and to excuse such juror either peremptorily or for cause is a matter within the sound

discretion of the trial judge. *State v. Matthews,* 299 N.C. 284, 261 S.E. 2d 872 (1980); *State v. Kirkman,* 293 N.C. 447, 238 S.E. 2d 456 (1977).

The record in the present case does not contain the initial interrogation and responses of Mr. Lonon, therefore we are unable to compare his answers during the initial and rehearing examinations to determine whether an incorrect or inconsistent response was given. However, it is clear from the record of Mr. Lonon's second questioning that he had discussed his opposition to the death penalty with other selected jurors in the jury room, in violation of the trial judge's instructions not to discuss the case, and that Mr. Lonon's aversion to the death penalty was not fully expressed at his initial interrogation. His statement upon reexamination that he would rather not be put to the test of having to decide whether to recommend the death penalty and his repeated requests to be excused due to his opinion on the death penalty were sufficient reason for the trial judge to allow the State to excuse Mr. Lonon by peremptory challenge under G.S. 15A-1214(g). We find no merit in defendant's assignment.

[10] Defendant contends under his ninth assignment that the trial court erred in denying his motion for a mistrial. He complains that two references by witnesses for the State to the possibility that defendant had killed other persons in addition to Kathy Mosley and Kathryn Carnes so prejudiced the jury that he was unable to obtain a fair trial. The first statement complained of was made by Officer Robert Schott in response to questions asking him to relate the substance of defendant's admissions subsequent to his arrest. The statement and the court's response thereto appear in the record as follows:

"Officer Schott: . . . The first interview lasted 10 minutes exactly. The recorder was turned off. I started to do the necessary paper work and at that time Danny stated that he had killed eight altogether.

Mr. Burgin: Objection and move to strike.

The Court: Objection sustained and motion to strike is allowed as to that last statement. It is not competent evidence in this case at this time, members of the jury."

The second statement occurred during the State's direct examination of Bobby Haynes, Sheriff of McDowell County, concerning defendant's statements to officers as to the location of the bodies of the murder victims, and was recorded as follows:

"Q. Now, Sheriff, did you have occasion to go to the North Cove section with Officer Reid, Officer Starnes and other members of your Department with Danny Parton on or about the 19th day of July, 1979, 18th or 19th?

A. Yes, we did.

Q. Just tell the members of the jury what you did and where you went and what occurred.

A. All right, after Sergeant Reid came by the office, Mr. Parton was interviewed by Detective Jack Turner of this Department, advised of his constitutional rights and in this interview, Mr. Parton stated that he had murdered two females, buried in the North Cove area. Two more were buried—

MR. BURGIN: Objection.

THE COURT: Sustained.

MR. BURGIN: Move to strike and ask to be heard in the absence of the jury.

THE COURT: Motion to strike is allowed."

Defendant moved for a mistrial, which motion was denied on the grounds that defendant had failed to show that the witnesses' statements were intentionally designed to prejudice the jury, and any prejudicial effect of the statements could be cured by an instruction to the jury to ignore them. Defense counsel refused the trial judge's offer to further instruct the jury to disregard these statements.

We agree that the statements complained of were inadmissible and incompetent evidence. The general rule is that in a defendant's trial for a particular crime, the State cannot offer evidence to implicate the defendant in the commission of another distinct, independent, or separate offense. *State v. Clark*, 298 N.C. 529, 259 S.E. 2d 271 (1979); *State v. Logner*, 297 N.C. 539, 256 S.E. 2d 166 (1979); *State v. McQueen*, 295 N.C. 96, 244 S.E. 2d 414

(1978). However, where defendant objects to the admission of incompetent evidence and the trial judge promptly instructs the jury not to consider it, the prejudicial impact of the evidence is ordinarily erased and no error entitling defendant to a new trial has occurred. It is assumed that jurors are individuals of sufficient character and intelligence to fully understand and comply with the court's instructions, and it is presumed that they have done so. *State v. McGuire*, 297 N.C. 69, 254 S.E. 2d 165, *cert. denied*, 444 U.S. 943, 100 S.Ct. 300, 62 L.Ed. 2d 310 (1979); *State v. Snead*, 295 N.C. 615, 247 S.E. 2d 893 (1978); *State v. Siler*, 291 N.C. 543, 234 S.E. 2d 733 (1977).

The incompetent statements of Officer Schott and Sheriff Haynes in the present case were unresponsive answers to direct examination by the State and were not in any way solicited by the State. There is sufficient evidence in the record to support the trial judge's finding that neither the State nor the witnesses were attempting to intentionally prejudice the jury by these remarks. Upon defendant's objection, the trial judge promptly instructed the jury to ignore these statements and offered to further instruct the jury to disregard the evidence if defendant so desired. We note that defense witness Dr. Bob Rollins, the psychiatrist who administered Sodium Amytal to defendant at Dorothea Dix Hospital, testified without objection that during his interrogation of defendant under the influence of the drug, he asked defendant why he said that he had killed more than two people, to which defendant responded that he probably wanted to be caught and punished. Under the circumstances of this case we find that the statements complained of by defendant were not so inherently prejudicial that their impact could not have been negated by the trial judge's prompt instructions that the jury should not consider the testimony for any purpose. *See State v. Moore*, 276 N.C. 142, 171 S.E. 2d 453 (1970). Defendant's motion for a mistrial was properly denied.

[11] By his final assignment defendant alleges that the trial court erred in including in its judgment the requirement that defendant pay $20,000.00 into each of the estates of Kathy Mosley and Kathryn Carnes before he may be considered eligible for parole or work release. A trial judge who imposes an active sentence on a defendant is not only authorized but required under the language of G.S. 148-33.2(c) and G.S. 148-57.1(c) to consider

State v. Parton

whether, as a rehabilitative measure, restitution or reparation should be ordered or recommended to the Parole Commission as a condition to the defendant's obtaining work-release privileges or parole. Defendant argues that these statutory provisions discriminate against him as an indigent, in violation of his fourteenth amendment right to equal protection of the laws. He claims that the imposition of a $40,000.00 restitution payment as a condition to attaining parole or work-release effectively insures that he will be incarcerated for a longer period than would a pecunious defendant serving the same sentence.

We approve of the reasoning of the Court of Appeals in *State v. Lambert*, 40 N.C. App. 418, 252 S.E. 2d 855 (1979), and *State v. Killian*, 37 N.C. App. 234, 245 S.E. 2d 812 (1978), which held that a requirement that a defendant pay restitution under G.S. 148-33.2(c) or G.S. 148-57.1(c) as a condition of obtaining work-release or parole is not inherently unconstitutional. Whether the restitution requirement is unconstitutional as applied to a particular defendant may only be determined by considering the defendant's financial status and other relevant circumstances at the time when the restitution must be paid. G.S. 15A-1371 requires defendant to serve a prison sentence of forty years before being eligible for consideration for parole. Under G.S. 148-33.1(b), defendant may not be considered eligible for work release privileges until he is eligible for parole or until such privileges are recommended by the presiding judge of the court which imposed the sentence. The presiding judge in the present case did not recommend that defendant be placed in a work-release program. Since the restitution ordered by the trial judge need only be paid after defendant becomes eligible for work-release privileges or parole, and defendant is not yet eligible for either alternative, we are not able to determine at this time whether defendant's constitutional rights were violated by the imposition of the restitution requirement. Defendant's constitutional challenge may only be considered after a review of his financial and other circumstances at the time he becomes eligible for parole or work-release privileges.

Defendant received a fair trial free from prejudicial error and we find

No error.

Justice MEYER did not participate in the consideration or decision of this case.