STATE OF NORTH CAROLINA v. GARY ELLIOTT GOLDMAN

No. 354A83

(Filed 6 July 1984)

1. **Constitutional Law § 51— speedy trial—pre-indictment delay—investigative delay justified**

    In a prosecution for first-degree murder, where the crime took place on 6 May 1975 but where defendant was not indicted until 14 December 1981, from the record, the Court concluded that the pre-indictment delay was attributable to an ongoing investigation of the case, and therefore, that the delay was reasonable, justified and for legitimate purposes. Defendant's only allegations of prejudice concerned claims of faded memory and evidentiary difficulties inherent in any delay, and the allegations were insufficient to find his constitutional due process right to a speedy trial was violated. G.S. 15A-954(a)(3).

2. **Constitutional Law § 51— denial of motion to dismiss for pre-indictment delay —no error—allegations of prejudice insufficient to justify motion**

    There was no error in the trial court's denial of defendant's motion to dismiss for pre-indictment delay pursuant to G.S. 15A-954(a)(3) on grounds that his motion contained only conjectural and conclusory allegations of possible prejudice or deliberate and unnecessary delay on the part of the prosecution where defendant made only general allegations of faded memory and lost witnesses, and where he did not indicate how he had been prejudiced by the additional length of the delay. Further, contrary to defendant's claim, in the absence of a showing of actual prejudice, our courts should consider dismissal in cases of serious crime with extreme caution.

3. **Constitutional Law § 51— pre-indictment delay—no evidentiary hearing on motion to dismiss—no error**

    There was no error in failing to provide defendant with an evidentiary hearing on his motion to dismiss on the basis of a pre-indictment delay where defendant's motion contained no factual allegations which merited further inquiry.

4. **Constitutional Law § 31— denial of a motion for funds to hire private investigator—no error**

    The trial judge did not abuse his discretion in denying defendant's motion for funds to hire a private investigator where defendant failed to demonstrate that "the State's failure to provide funds with which to hire an investigator substantially prejudiced his ability to obtain a fair trial."

5. **Constitutional Law § 30— in camera inspection of the evidence—procedures complied with**

    In a prosecution for first-degree murder, the trial court fully complied with the mandates of *State v. Hardy,* and G.S. 15A-904(a) in ruling on defendant's motion requesting an *in camera* inspection of evidence in the State's possession where the record disclosed that the State voluntarily provided defense counsel with prior statements of the testifying witnesses following

their direct examination, and with respect to the one statement which the State did not voluntarily provide, the trial judge reviewed the evidence *in camera* and sealed the excluded evidence and placed it in the record for appellate review.

**6. Criminal Law § 97.1— recalling witness to corroborate the testimony—no abuse of discretion**

The trial judge acted well within his discretion in permitting a detective to be recalled and questioned to corroborate testimony of other witnesses since the manner and presentation of evidence is largely within the discretion of the trial judge and his control of the case will not be disturbed absent a manifest abuse of discretion.

Justice MITCHELL took no part in the consideration or decision of this case.

APPEAL by defendant from *Bowen, J.,* at the 28 February 1983 Criminal Session of Superior Court, WAKE County, following defendant's convictions of first-degree murder, under the felony murder rule, and robbery with a dangerous weapon. Defendant was sentenced to life imprisonment and appeals as of right pursuant to G.S. § 7A-27(a). Heard in the Supreme Court 8 May 1984.

Defendant was convicted of the 1975 robbery and murder of Elizabeth Parks Rosenburg. The issues brought forward on this appeal involve allegations of a violation of defendant's right to a speedy trial; denial of his motion for funds to hire a private investigator; the trial court's ruling on his discovery motion; and the trial court's allowing a State's witness to be recalled. We find no error.

*Rufus L. Edmisten, Attorney General, by Donald W. Stephens, Assistant Attorney General, for the State.*

*H. Spencer Barrow and Allen W. Powell, Attorneys for defendant-appellant.*

MEYER, Justice.

Facts pertinent to a resolution of the issues raised in this appeal include the following:

Shortly after 6:30 a.m. on 6 May 1975, the body of the victim, Elizabeth Parks Rosenburg, was discovered lying near her car which was parked in the driveway of an insurance company building across from the campus of North Carolina State University in

Raleigh. Her face had been crushed beyond recognition. She had also been struck in the abdomen with a blow of such force as to crush her liver causing extensive hemorrhaging. It was the opinion of the examining pathologist that the victim had bled to death as a result of the damage to her liver. The physical evidence tended to suggest that the victim had been struck by a metal pipe with a concrete base which was found a short distance from the body. Ms. Rosenburg was last seen shortly after midnight on 6 May leaving the D. H. Hill Library on the North Carolina State University campus where she had been studying for final exams. She was carrying her books and a leather shoulder bag. The shoulder bag containing her wallet and credit cards was not found at the scene and was never recovered.

Defendant was indicted on 14 December 1981 for the 6 May 1975 robbery and murder of Elizabeth Parks Rosenburg. Evidence at trial tended to show that in May 1975 the defendant was living near the campus of North Carolina State University. During the evening of 5 May, defendant had visited Tracy Current, a resident of Haven House, a rehabilitation facility for drug addicts. Sometime after midnight defendant returned to Haven House, which was located a short distance from the scene of the crime, and woke Miss Current. She testified that defendant complained of scratches on his arm and was in possession of paper money and what appeared to be a credit card. Miss Current testified that when she asked him about the scratches on his arm, defendant responded that "he didn't hurt as bad as she did or she got worse." Miss Current first disclosed this information to law enforcement authorities when she was questioned in 1981. Larry Lumsden testified that sometime between May 7-9, 1975, defendant stated in the presence of Lumsden and others that "he [defendant] was sitting on the walk by the Baptist State Center on Hillsborough Street (opposite the parking area where the victim's body was discovered) and he wanted some money for some wine and that he was going to snatch a woman's purse," and that "[w]hen he did she broke or fought back so he had to hurt her." Mr. Lumsden was questioned by police in 1975 and apparently disclosed this information at that time.

In April 1976 defendant was living in Dalton, Georgia. In the presence of Thomas Wiley and Phyllis Hamilton he allegedly made reference to his "trouble in North Carolina" — specifically

purse snatching around a college campus. He stated that he had "killed before" and "it wouldn't bother [him] to do it again." These witnesses were not questioned by police until 1981.

In 1976 defendant was sentenced to life imprisonment in Georgia for murder and robbery. Franklin Adams testified that in 1981, while a resident of the Georgia State Prison system, he had occasion to talk with the defendant. Defendant told Adams that he had beaten a girl to death with some type of fence post or metal with cement and that this occurred in North Carolina close to a college campus. Defendant stated that he and another boy snatched the girl's purse but that a man who was with the girl tried to stop them. The man ran off and defendant dragged the girl out of her car and beat her.

[1] Defendant makes three arguments in support of his contention that he was denied his right to a speedy trial on grounds of pre-indictment delay. Defendant first contends that the trial judge committed prejudicial error in denying his Motion to Dismiss under G.S. § 15A-954(a)(3) for violation of his constitutional right to a speedy trial. The motion, filed 24 March 1982, states the following:

## PRE-INDICTMENT DELAY

1. The State alleges that on May 6, 1975, Elizabeth Rosenburg was murdered in the City of Raleigh, North Carolina.

2. On the 15th day of December, 1981, defendant was arrested in Atlanta, Georgia, on warrants charging him with murder and armed robbery. Defendant has since been held without privilege of bond.

3. Motion and Arraignment in this case was originally set for March 15th, but has been continued until April 2, 1982. Therefore, the defendant will be tried, at the earliest, nearly seven years after the date of the victim's death.

4. The defendant, upon information and belief, is of the opinion that the State will primarily base its case upon alleged statements made by the defendant to fellow inmates during the course of defendant's term of imprisonment in the Georgia Prison System. These alleged statements supposedly

were made sometime in late 1975 or early 1976. Therefore, the foundation of the State's case has been available to the State for approximately six years.

5. There is no justifiable excuse for the State's delay in instituting these proceedings against defendant.

The delay has rendered it impossible to properly prepare the defendant's defense for the following reasons:

a. It is now impossible for defendant to recall his exact whereabouts at the time the murders occurred.

b. Potential witnesses for the defendant are unable to recall where they were or whether they were with defendant at the times alleged in the Bills of Indictment; and

c. Any hope of learning the true identity of the individuals who committed this murder has been removed by the lapse of time.

6. Defendant has been available for interviews and to be arrested since he was imprisoned in Georgia on June 23, 1976. Raleigh, Wake County, and North Carolina law enforcement officers have known the defendant's whereabouts since June 23, 1976.

The principles of law respecting the violation of defendant's constitutional right to a speedy trial based on pre-indictment delay are fully set forth in *United States v. Lovasco*, 431 U.S. 783, 52 L.Ed. 2d 752 (1977), and have been applied by this Court in *State v. McCoy*, 303 N.C. 1, 277 S.E. 2d 515 (1981).

In *Lovasco*, the United States Supreme Court first reiterated its holding in *United States v. Marion*, 404 U.S. 307, 30 L.Ed. 2d 468 (1971), a case which considered the significance, for constitutional purposes, of a lengthy pre-indictment delay. The Court wrote:

We held [in *Marion*] that as far as the Speedy Trial Clause of the Sixth Amendment is concerned, such delay is wholly irrelevant, since our analysis of the language, history, and purposes of the Clause persuaded us that only "a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge . . .

engage the particular protections" of that provision. We went on to note that statutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide " 'the primary guarantee against bringing overly stale criminal charges.' " But we did acknowledge that the "statute of limitations does not fully define [defendants'] rights with respect to the events occurring prior to indictment," and that the Due Process Clause has a limited role to play in protecting against oppressive delay.

*Id.* at 788-89, 52 L.Ed. 2d at 758 (citations omitted).

The Court then stated that "the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Id.* at 790, 52 L.Ed. 2d at 759.

In determining whether the defendant in the present case is entitled to dismissal of the charges against him for violation of his constitutional due process right to a speedy trial, we must first consider the reasons for the pre-indictment delay. The record does not disclose what event initiated the State's further investigation of the case in 1981. It is clear, however, that the State's decision to postpone indictment until 1981 was sound. Apart from a statement made to law enforcement authorities by Larry Lumsden, there was, in 1975, no other evidence to connect this defendant to the crime. Defendant's inculpatory statements to Wiley, Hamilton, and Adams were not disclosed until 1981. Ms. Current was not interviewed until 1981. We can only speculate that defendant was perhaps a suspect in 1975, and due to the persistent efforts of law enforcement authorities, some inculpatory evidence was uncovered which ultimately led police to witnesses Wiley, Hamilton, Adams and Current in 1981.

In *Lovasco,* the United States Supreme Court wrote: "In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused' . . ." *Id.* at 795, 52 L.Ed. 2d at 762. In a pre-*Lovasco* case, this Court recognized the legitimacy of pre-indictment investigative delay, stating that "[t]he legitimate need to protect the existence of an ongoing undercover investigation from exposure has been frequently recognized by the federal courts as a reasonable justification for delay in bringing an indictment." *State v. Dietz,* 289 N.C. 488, 492, 223 S.E. 2d 357, 360 (1976).

On the question of pre-indictment investigative delay, we find that the rationale for the Court's decision in *Lovasco* bears particular relevance to the present case. Noting first that the "Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment," the Court reasoned:

> It requires no extended argument to establish that prosecutors do not deviate from "fundamental conceptions of justice" when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause. It should be equally obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt. To impose such a duty "would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself." From the perspective of potential defendants, requiring prosecutions to commence when probable cause is established is undesirable because it would increase the likelihood of unwarranted charges being filed, and would add to the time during which defendants stand accused but untried. . . . From the perspective of law enforcement officials, a requirement of immediate prosecution upon probable cause is equally unacceptable because it could make obtaining proof of guilt beyond a reasonable doubt impossible by causing potentially fruitful sources of information to evaporate before they are fully exploited. And from the standpoint of the courts, such a requirement is unwise because it would cause scarce resources to be consumed on cases that prove to be insubstantial, or that involve only some of the responsible parties or some of the criminal acts. Thus, no one's interests would be well served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so.

*United States v. Lovasco*, 431 U.S. at 790-92, 52 L.Ed. 2d at 759-60 (citation omitted).

The Court then held that "to prosecute a defendant following investigative delay does not deprive him of due process, even if

his defense might have been somewhat prejudiced by the lapse of time." *Id.* at 796, 52 L.Ed. 2d at 763.

In *State v. McCoy*, 303 N.C. 1, 277 S.E. 2d 515, we first applied the principles enunciated in *Lovasco* and stated that in order to prevail on allegations of a constitutional due process violation of the right to a speedy trial, a defendant must show "that the delay actually prejudiced the conduct of his defense and that it was unreasonable, unjustified, and engaged in by the prosecution deliberately and unnecessarily in order to gain tactical advantage over the defendant." *Id.* at 7-8, 277 S.E. 2d at 522. On the record before us we can conclude only that pre-indictment delay was attributable to an ongoing investigation of the case. We therefore hold that the delay was reasonable, justified, and for legitimate purposes.

Defendant's only allegations of prejudice concern claims of faded memory and evidentiary difficulties inherent in any delay. As we stated in *State v. Dietz*, 289 N.C. at 493, 223 S.E. 2d at 361, "[h]ardly a criminal case exists where the defendant could not make these general averments of impaired memory and lost witnesses." We therefore hold that in balancing what can only be viewed on these facts as the State's legitimate decision to defer prosecution during an ongoing investigation of the case, against defendant's failure to show actual or substantial prejudice resulting from the delay, defendant's constitutional due process right to a speedy trial was not violated.

[2] As his second argument, defendant contends that the trial court erred in denying his Motion to Dismiss pursuant to G.S. § 15A-954(a)(3) on grounds that his motion contained only conjectural and conclusory allegations of possible prejudice or deliberate and unnecessary delay on the part of the prosecution. For the reasons stated in our discussion of defendant's first issue, we find no error. Defendant attempts to distinguish *State v. Dietz*, 289 N.C. 488, 223 S.E. 2d 357, by arguing that his allegations were more specific than those in *Dietz*; that the delay in the present case was considerably longer than that in *Dietz*; and the crimes in the present case are more serious than those in *Dietz*.

While it may be true that defendant's allegations in his motion are more specific than the *affidavit* filed in *Dietz*,[1] they nevertheless fall short of the factual allegations necessary to support his contentions of unnecessary and deliberate delay on the part of the prosecution, or of actual prejudice. The record does not support his conclusion that "the foundation of the State's case has been available to the State for approximately six years." Nor, as we have noted earlier, is there a basis in the record for his conclusion that "[t]here is no justifiable excuse for the State's delay in instituting these proceedings against the defendant." It is clear that delay was occasioned by an ongoing investigative process and defendant's motion fails to allege facts that would refute the evidence now of record or suggest otherwise. We agree, too, that the six and one-half year delay in prosecuting this defendant was considerably longer than the four and one-half month preindictment delay in *Dietz*. However, as we stated in *State v. McKoy*, 294 N.C. 134, 140, 240 S.E. 2d 383, 388 (1978), "it cannot be said precisely how long a delay is too long," but rather the courts must engage in a balancing test. Here defendant has made only general allegations of faded memory and lost witnesses. He has not indicated how he has been prejudiced by the additional length of the delay. Finally, we do not agree that defendant's cases, because they involve more serious crimes, are more deserving of dismissal. To the contrary, it would seem more appropriate, in the absence of a showing of actual prejudice, that our courts should consider dismissal in cases of serious crimes with extreme caution. We therefore agree with the trial judge that defendant failed to allege, with sufficient specificity, facts to support his Motion to Dismiss based on pre-indictment delay.

[3]   Finally, we reject defendant's third argument that, based on the allegations in his motion, he was entitled to an evidentiary hearing. The trial court based its ruling on *State v. Dietz*, 289 N.C. at 494, 223 S.E. 2d at 361. In *Dietz* we quoted from *United States v. Pritchard*, 458 F. 2d 1036 (7th Cir. 1972), *cert. denied*, 407 U.S. 911 (1972), and stated:

". . . In the instant case the defendant's assertion of prejudice is a wholly conclusory allegation. No specific actual

---

1. We do not have the benefit of the motion filed in *Dietz*. The record does not disclose whether defendant here accompanied his motion with an affidavit.

prejudice is factually alleged. The rationale of *Marion* is equally applicable here. Mere 'delay' does not equate with 'actual prejudice.' And, defendant alleged nothing in his motion which entitled him to an evidentiary hearing on an issue of actual prejudice alleged to have resulted from the delay. His motion speaks only of a potential prejudice predicated on the pre-indictment delay itself. Moreover, no actual prejudice was shown at the ensuing trial."

Here, defendant's motion, as we have stated, contained no factual allegations which would merit further inquiry. Nor does the record before us reveal that an evidentiary hearing would have disclosed information favorable to defendant's position. In fact, based on testimony at trial, it became evident that defendant made no inculpatory statements to Adams until 1981, contrary to his allegation in the motion that "these alleged statements supposedly were made sometime in late 1975 or early 1976." The trial judge did not abuse his discretion in denying defendant an evidentiary hearing.

Having considered defendant's three arguments in support of his contention that his right to a speedy trial has been violated, we hold that the trial court did not err in denying the motion to dismiss based on pre-indictment delay.[2]

[4] Defendant assigns as error the trial court's denial of his motion for funds to hire a private investigator. In his motion defendant alleged that the delay in prosecuting the defendant "has rendered it impossible to properly prepare the defendant's defense," setting out as his reasons:

(a) It is now impossible for defendant to recall his exact whereabouts at the time the murder and robbery occurred;

(b) Since the defendant is being held without privilege of bond, it is impossible for him to locate potential witnesses or interview potential witnesses to determine where they were

---

2. Defendant's motion to dismiss also included allegations of a violation of his right to a speedy trial based on post-indictment delay. The record discloses no objection or exception taken to the trial court's findings of fact on this assignment. Defendant did not assign error on this question nor is it discussed in his brief. Our review of the record discloses no error.

or whether they were with defendant at the time alleged in the Bills of Indictment; and

(c) Upon information and belief the complexity of this case requires that the defendant have an investigator at his disposal with which to investigate the charges or mitigate guilt.

He also argued that "thousands of man hours" had been spent on his case by law enforcement authorities; and that counsel did not have sufficient time to adequately prepare his case without assistance. Defendant's motion, while arguably alleging that the services of a private investigator would be of some benefit to his defense, fails to demonstrate that "the State's failure to provide funds with which to hire an investigator substantially prejudiced his ability to obtain a fair trial." *State v. Parton*, 303 N.C. 55, 66, 277 S.E. 2d 410, 418 (1981). *See State v. Corbett*, 307 N.C. 169, 297 S.E. 2d 553 (1982). In *State v. Gray*, 292 N.C. 270, 277, 233 S.E. 2d 905, 911 (1977), we recognized that "the assistance of an expert or private investigator or both would be, generally, welcomed by all defendants and their counsel as an added convenience to the preparation of a defense. We must, however, also recognize that it is practically and financially impossible for the state to give indigents charged with crime every jot of advantage enjoyed by the more financially privileged." (Citation omitted.) The decision whether to provide a defendant with an investigator is a matter within the discretion of the trial judge and will not be disturbed on appeal absent a showing of abuse of that discretion. *State v. Parton*, 303 N.C. 55, 277 S.E. 2d 410. We hold that the trial judge did not abuse his discretion in denying defendant's motion for funds to hire a private investigator.

[5] Defendant next contends that the trial judge erred in its ruling on defendant's motion requesting an *in camera* inspection of evidence in the State's possession. Defendant cites as authority *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977). The trial judge granted the motion to the extent that it agreed to "review statements of the witnesses and make appropriate findings as witnesses are presented." Defendant now argues that "[a] reading of the Transcript indicates that this statement by the trial judge was the only ruling on the Motion in question," and that to de-

fendant's knowledge "the trial judge never reviewed any state-ments of witnesses who testified in the trial." Defendant also argues that he has no knowledge of any statements being placed in sealed envelopes for appellate review.

It is clear from the record that the State voluntarily pro-vided defense counsel with prior statements of the testifying witnesses following their direct examination. With respect to the one statement which the State did not voluntarily provide, the trial judge ruled as follows:

> Let the record show that the court has reviewed in camera two pages bearing Raleigh Police Department sup-plemental offense report No. 192136, dated May 12, 1975, and one page bearing Raleigh Police Department supplemental of-fense report, dated May 6, 1975, and based upon its review the court finds that the supplemental reports above iden-tified are not inconsistent with the witness's testimony and concludes that the defense counsel are not entitled to copies of the report. The court directs that copies of the reports be placed in an envelope and sealed for appellate review. Nei-ther do they appear to be exculpatory and the court con-cludes not entitled to copies of them.

The excluded evidence was sealed and placed in the record for ap-pellate review. Upon our examination of the statement, we hold that the trial judge's ruling was proper.

The record therefore reflects that the trial court fully com-plied with the mandates of *State v. Hardy* and G.S. § 15A-904(a).[3] *See State v. Waters*, 308 N.C. 348, 302 S.E. 2d 188 (1983).

Defendant also contends that the trial court erred in failing to conduct an *in camera* inspection of all physical evidence in the State's possession. At trial the defendant had a full opportunity to examine the physical evidence, to request reports, and to cross-examine investigating officers. Our review of the record discloses no suggestion that the State withheld information or evidence favorable to the defendant. Certainly the trial judge is not re-

---

3. *See State v. Jean*, 310 N.C. 157, 311 S.E. 2d 266 (1984), which sets out fully the amendment to G.S. § 15A-903 respecting discovery procedures for statements of State's witnesses.

quired to engage in a speculative *in camera* judicial assessment and analysis of all the evidence gathered in preparation for a criminal prosecution. This assignment of error is overruled.

[6] Finally defendant contends that the trial judge erred in permitting Detective Holder to be recalled as a witness for the State. Detective Holder was first called by the State to testify concerning his observations at the crime scene. Following his testimony, SBI Agent Jones testified that footprints found at the scene were made by canvas-type tennis shoes. The defense attempted, through cross-examination of several witnesses who were at the scene, to suggest that the footprints were made by investigating personnel. Detective Holder was then recalled to testify whether any investigating officer at the crime scene was wearing tennis shoes. At this time he was also permitted to corroborate the testimony of previous witnesses. Later Detective Holder was again recalled to corroborate the testimony of a witness who had just testified. We find no error in allowing Detective Holder to be recalled to testify concerning these matters.

This Court has long recognized that the trial court has the discretion to allow either party to recall witnesses to offer additional evidence, even after jury arguments. *State v. Anderson*, 281 N.C. 261, 188 S.E. 2d 336 (1972). *See* G.S. § 15A-1226(b).

The trial judge has the power and the duty to supervise and control the trial, including examination and cross-examination of witnesses. *State v. McDougall*, 308 N.C. 1, 301 S.E. 2d 308 (1983). The manner and presentation of evidence is largely in the discretion of the trial judge and his control of the case will not be disturbed absent a manifest abuse of discretion. *State v. Harris*, 308 N.C. 159, 301 S.E. 2d 91 (1983). We hold that the trial judge acted well within his discretion in permitting Detective Holder to be recalled and questioned.

Our review of the trial transcript and record on appeal discloses that defendant has been ably represented at trial and on appeal. He received a fair trial free of prejudicial error.

No error.

Justice MITCHELL took no part in the consideration or decision of this case.