CORA ELIZABETH McINTOSH, Plaintiff v. DANNY TILMON McINTOSH, Defendant

No. COA06-691

(Filed 17 July 2007)

**1. Continuances denied— no abuse of discretion**

The trial court did not abuse its discretion by denying a continuance for an equitable distribution trial in light of the numerous and lengthy delays in hearing the case, and of the court's notice to plaintiff to hire an attorney and be ready to move forward.

**2. Judgments— consent—voluntariness**

The trial court did not err by finding that the parties had entered into a valid consent judgment in an equitable distribution case where plaintiff agreed that she had made a choice, albeit between two unappealing options (settling or proceeding to trial without counsel).

**3. Civil Procedure— Rule 60 motion for relief—denied—well-reasoned decision**

The trial judge did not err by denying plaintiff's Rule 60 motion for relief from a consent judgment where the judge entered a nine-page order, with a timeline and transcript attached, and made 25 relevant and detailed findings and seven conclusions. The decision was well-reasoned and based on the judge's lengthy experience with the parties and the case.

Appeal by plaintiff from judgment entered 6 September 2005 and order entered 17 March 2006 by Judge Rebecca B. Knight in District Court, Buncombe County. Heard in the Court of Appeals 19 March 2007.

*The Sutton Firm, P.A., by April Burt Sutton, for plaintiff-appellant.*

*Mary Elizabeth Arrowood, for defendant-appellee.*

WYNN, Judge.

In this appeal arising from a consent judgment for equitable distribution, the plaintiff argues that the trial court erred in a number of respects relating to her lack of counsel at trial and her subsequent need to represent herself. After a careful review of the record, we find no error.

Plaintiff Cora Elizabeth McIntosh and Defendant Danny Tilmon McIntosh married in 1977 and separated on December 31, 2000. The two divorced on 27 June 2002, and Ms. McIntosh filed a complaint against Mr. McIntosh on 2 May 2002, for child custody and support, alimony, post-separation support, equitable distribution and writ of possession. On 2 December 2002, the trial court ordered Ms. McIntosh to file her equitable distribution affidavit on or before 3 January 2003, and told both parties and their respective counsel to be present at a pre-trial conference set for 6 February 2003.

At the 6 February pre-trial conference, Mr. McIntosh filed a motion to dismiss the complaint for insufficiency of process and service of process; Ms. McIntosh did not attend the pre-trial conference. At another hearing on 6 March 2003, the trial court found that Ms. McIntosh had failed to comply with the 2 December order and had not offered just cause for such failure; the trial court ordered Ms. McIntosh to file her equitable distribution affidavit by 14 March 2003, or the cause of action would be dismissed with prejudice. On 13 March 2003, the trial court denied Mr. McIntosh's motion to dismiss, finding that service had been proper; Ms. McIntosh filed her equitable distribution affidavit on that same day.

Following an answer and counter-complaint from Mr. McIntosh, as well as an appeal of the denial of his motion to dismiss that he elected not to pursue, the equitable distribution claim was scheduled for trial on 22 March 2004. However, in early March, a new attorney filed a notice of appearance as counsel for Ms. McIntosh and requested a continuance due to insufficient time to prepare for the trial and a need for additional time for a financial expert to review documents received in discovery. Ms. McIntosh's former counsel, from Legal Aid of North Carolina, also filed a motion to withdraw as attorney of record, stating that Ms. McIntosh "had hired other counsel, that [she] had been uncooperative with the attorney . . ., that [she] and the attorney were no longer able to maintain a meaningful relationship or effectively communicate[.]" The trial court granted the motion to withdraw and continued the equitable distribution trial, first to 4 May 2004, and then, after an amended order, to 21 June 2004.

On 7 June 2004, Ms. McIntosh filed another motion to continue to allow her expert additional time to obtain and review documents; the trial was continued to 14 September 2004. Mr. McIntosh then filed a motion to continue so that his expert could be available to testify, and the trial was continued to January 2005. On 31 March 2005, after the January trial, an equitable distribution judgment was entered, but it was subsequently set aside on 28 June 2005, due to inadequate stipulations at trial. A new trial was scheduled for 8 August 2005.

Prior to the August trial, Ms. McIntosh's second attorney filed a motion to withdraw, citing as the reason Ms. McIntosh's failure to pay for her services. The trial court allowed the motion and continued the case to 6 September 2005, to allow Ms. McIntosh time to find a new lawyer. At that time, the trial court also instructed Ms. McIntosh that she needed to be ready to proceed on 6 September; Ms. McIntosh

informed the trial court that she was expecting to have a loan approved that afternoon and would hire an attorney within the week, so would be ready to move forward on 6 September.

Nevertheless, Ms. McIntosh faxed a motion for continuance to the court on 29 August 2005, which the trial court stated was not seen until the time of the hearing on 6 September. The trial court denied the motion to continue "based upon the prior reasons that this was why the case was continued last time." Ms. McIntosh informed the trial court that she "certainly [was] not qualified to represent [herself] and [she] would beg the Court to allow [her] to get the loan and get an attorney to represent [her][,]" as "it would be such an unfair advantage . . . not to have an attorney."

The trial court noted that Ms. McIntosh had had "a month to make arrangements to hire an attorney[]" and the case was "no closer today than we were a month ago[.]" Ms. McIntosh and the defense counsel both mentioned to the trial court that each had made settlement offers to the other. The defense counsel also informed the trial court that she "[does not] think there's going to be a whole lot of difference from what we had last time. So I certainly don't think it's a surprise to anybody."

The trial court then refused to delay the proceedings and instructed Ms. McIntosh that she was "present during the last trial and so [she] understand[s] the format and how things proceeded . . . the things [she] testified about." The trial court suggested to Ms. McIntosh that:

> So, if you are totally at a loss, . . . you either settle your case and agree that you're going to give up some things that you didn't think you were going to give up before and just at least know what you're going to get, or you're going to have to . . . come up with a way of how you're going to offer your evidence. But you've been through this entire proceeding before so it's not the first time that you've gone through this. So it's up to you. You're welcome to settle your case, you're welcome to try your case. But if I have no evidence and you offer no evidence, I can't proceed. I can't enter an order. And I can dismiss your claim.

Ms. McIntosh subsequently entered into negotiations with Mr. McIntosh's attorney, and the two parties reached an agreement for a consent judgment of equitable distribution. The trial court ques-

tioned Ms. McIntosh as to the voluntariness of her entry into the consent judgment; she responded that she felt she was "left with no other choice but to do this," and the trial court noted that it was still Ms. McIntosh's choice. Ms. McIntosh stated that it was "the best [she] could do because [she] can't argue [her] own case" and acknowledged that she was not threatened into signing the judgment. After likewise questioning Mr. McIntosh,.the trial court entered the judgment.

On 5 October 2005, Ms. McIntosh filed a Rule 60 motion, seeking to have the consent judgment set aside for excusable neglect or "for any other reason justifying relief from the operation of the judgment," including alleged duress and pressure applied by the trial court due to her lack of representation. The trial court denied the Rule 60 motion on 17 March 2006, entering a nine-page order recounting the procedural history of the case and the reasons for the denial of the motion to continue, and attaching a six-page timeline and the entire trial transcript.

Ms. McIntosh now appeals, arguing that (I) the trial court abused its discretion in denying her motion for continuance of the equitable distribution trial; (II) the evidence does not support the trial court's finding that the parties entered into a valid consent judgment; and (III) the trial court erred in denying her Rule 60 motion for relief from the 6 September 2005 consent judgment.

I.

[1] First, Ms. McIntosh argues that the trial court abused its discretion in denying her motion for continuance of the equitable distribution trial. We disagree.

Under the North Carolina Rules of Civil Procedure, "[a] continuance may be granted only for good cause shown and upon such terms and conditions as justice may require." N.C. Gen. Stat. § 1A-1, Rule 40 (2005). Moreover, a motion for continuance is "ordinarily addressed to the sound discretion of the trial judge and not subject to review on appeal absent an abuse of that discretion." *State v. Parton*, 303 N.C. 55, 68, 277 S.E.2d 410, 419 (1981), *overruled on other grounds, State v. Freeman*, 314 N.C. 432, 437-38, 333 S.E.2d 743, 746-47 (1985); *see also Caswell Realty Assocs. I, L.P. v. Andrews Co., Inc.*, 128 N.C. App. 716, 721, 496 S.E.2d 607, 612 (1998) ("Absent an abuse of discretion, the court's ruling [on a motion for continu-

ance] will not be disturbed on appeal." (citation omitted)). This Court will find such an abuse of discretion only if the trial court's decision was "unsupported by reason and could not have been a result of competent inquiry." *Wiencek-Adams v. Adams,* 331 N.C. 688, 691, 417 S.E.2d 449, 451 (1992).

Here, Ms. McIntosh attempts to argue that the trial court's denial of her motion for a continuance violated her right to counsel, and, as such, the decision is a reviewable question of law. *See Parton,* 303 N.C. at 68, 277 S.E.2d at 419 ("However, when the motion [for continuance] is based on a right guaranteed by the United States or North Carolina Constitutions, the question presented is a reviewable question of law."). Nevertheless, we observe that there is no liberty interest at stake in an equitable distribution trial; accordingly, there is no constitutional right to counsel. *See King v. King,* 144 N.C. App. 391, 393, 547 S.E.2d 846, 847 (2001) (holding that no right to counsel in trial for modification of child support because due process requires appointed counsel only where an individual "cannot afford counsel on his own and where the litigant may lose his physical liberty if he loses the litigation" (citation and quotation omitted)). Thus, we review the trial court's decision only for an abuse of discretion.

The record before us shows that Ms. McIntosh filed her equitable distribution claim in May 2002, yet due to a number of delays and continuances by both parties, the trial was not held until September 2005, over three years later. After granting Ms. McIntosh a continuance in August 2005, the trial court instructed Ms. McIntosh to be ready for trial in September; despite this direction, Ms. McIntosh still requested another continuance, based on her continuing failure to hire a new attorney—the same reason as previously—at the September trial date. The record further indicates that the 31 March 2005 equitable distribution judgment was set aside by the trial court for procedural, not substantive, reasons, and the September trial was likely to be almost identical to the earlier proceedings.

In light of the numerous and lengthy delays in hearing this case, and of the trial court's notice to Ms. McIntosh to hire an attorney and be ready to move forward at the September trial date, we agree with the trial court that Ms. McIntosh did not show good cause for, nor did justice require, another continuance. Accordingly, we see no abuse of discretion in the court's denial of Ms. McIntosh's motion for a continuance. This assignment of error is overruled.

II.

[2] Next, Ms. McIntosh argues that the trial court erred by finding that the parties entered into a valid consent judgment of equitable distribution. We disagree.

This Court has repeatedly held:

> The authority of a court to sign and enter a consent judgment depends upon the unqualified consent of the parties thereto, and the judgment is void if such consent does not exist at the time the court sanctions or approves the agreement of the parties and promulgates it as a judgment.

*Hill v. Hill*, 97 N.C. App. 499, 501, 389 S.E.2d 141, 142 (1990) (citing *Lynch v. Lynch*, 74 N.C. App. 540, 329 S.E.2d 415 (1985), and *Overton v. Overton*, 259 N.C. 31, 129 S.E.2d 593 (1963)); *see also Buckingham v. Buckingham*, 134 N.C. App. 82, 87, 516 S.E.2d 869, 873-74, *disc. review denied*, 351 N.C. 100, 540 S.E.2d 353 (1999). However, in order to be valid, consent judgments do not require the parties to appear in court and acknowledge to the court their continuing consent to the entry of the judgment. *Tevepaugh v. Tevepaugh*, 135 N.C. App. 489, 492, 521 S.E.2d 117, 120 (1999). Indeed, "absent any circumstances to put the court on notice that one of the parties does not actually consent thereto, a judge may properly rely upon the signatures of the parties as evidence of consent to a judgment." *Wachovia Bank & Trust Co., N.A. v. Bounous*, 53 N.C. App. 700, 706, 281 S.E.2d 712, 715 (1981); *see also Ledford v. Ledford*, 229 N.C. 373, 376, 49 S.E.2d 794, 796 (1948) (noting that, if supported by some evidence, the findings of fact made by the trial judge in determining whether a party gave consent to a judgment as entered are binding on appeal because the court is the judge of the weight and credibility of the evidence).

In the instant case, Ms. McIntosh concedes that she signed the consent judgment of equitable distribution that was presented to the trial court for approval and entry. However, she contends that there were "circumstances to put the court on notice" that she did not actually consent to the agreement and in fact signed only under the threat and duress of the possibility of having her complaint dismissed. When questioned by the trial court as to the voluntariness of her consent to the judgment, Ms. McIntosh answered that she felt she was "left with no other choice but to do this" and that she decided the consent judgment "was the best that I could do because I can't argue my own case."

The transcript also makes clear, however, that Ms. McIntosh acknowledged that she had still made a choice, waiving her option of going to trial in favor of having a certain outcome with the consent judgment, albeit a choice between what she believed to be two unappealing options. Moreover, Ms. McIntosh informed the trial court that she had not been threatened, intimidated, or bullied in any way into signing the consent judgment. Ms. McIntosh participated in negotiations with opposing counsel throughout the day, and the consent judgment ultimately agreed to was substantially similar to the one entered and subsequently set aside by the trial court in March 2005.

We find that, notwithstanding her displeasure at the circumstances, Ms. McIntosh signed the agreement in the absence of threat, coercion, intimidation, or duress, and her consent was therefore voluntary. The consent judgment is valid, and this assignment of error is overruled.

III.

**[3]** Ms. McIntosh's final argument on appeal is that the trial court erred by denying her Rule 60 motion for relief from the consent judgment, because the judgment was void or, alternatively, because her lack of preparation for the equitable distribution trial was due to excusable neglect. We disagree.

Rule 60 offers parties the opportunity to have a final judgment set aside due to clerical and other mistakes, inadvertence, excusable neglect, newly discovered evidence, fraud on the court, or "[a]ny other reason justifying relief from the operation of the judgment." N.C. Gen. Stat. § 1A-1, Rule 60 (2005). Further, "it is well settled that Rule 60(b)(6) does not include relief from errors of law or erroneous judgments," and is therefore not a substitute for appellate review. *Baxley v. Jackson,* 179 N.C. App. 635, 634 S.E.2d 905, 907 (citing *Garrison ex rel. Chavis v. Barnes,* 117 N.C. App. 206, 210, 450 S.E.2d 554, 557 (1994)), *disc. review denied,* 360 N.C. 644, 638 S.E.2d 462 (2006). Such motions are "addressed to the sound discretion of the trial court and its ruling will not be disturbed absent an abuse of that discretion." *Gibson v. Mena,* 144 N.C. App. 125, 128, 548 S.E.2d 745, 747 (2001).

Because we have concluded that the consent judgment was not void as a matter of law, we consider Ms. McIntosh's Rule 60 motion only on the grounds of excusable neglect. The issue of "what constitutes 'excusable neglect' is a question of law which is fully reviewable

on appeal." *In re Hall,* 89 N.C. App. 685, 687, 366 S.E.2d 882, 884, *disc. review denied,* 322 N.C. 835, 371 S.E.2d 277 (1988). As held by our Supreme Court,

> While there is no clear dividing line as to what falls within the confines of excusable neglect as grounds for the setting aside of a judgment, what constitutes excusable neglect depends upon what, under all the surrounding circumstances, may be reasonably expected of a party in paying proper attention to his case.

*Thomas M. McInnis & Assocs., Inc. v. Hall,* 318 N.C. 421, 425, 349 S.E.2d 552, 554-55 (1986). Thus, we have previously noted that "[d]eliberate or willful conduct cannot constitute excusable neglect, nor does inadvertent conduct that does not demonstrate diligence." *Couch v. Private Diagnostic Clinic,* 133 N.C. App. 93, 103, 515 S.E.2d 30, 38 (citations omitted), *aff'd,* 351 N.C. 92, 520 S.E.2d 785 (1999). We have also held that the failure of a party to obtain an attorney is not excusable neglect. *See Creasman v. Creasman,* 152 N.C. App. 119, 124-25, 566 S.E.2d 725, 729 (2002); *Hall,* 89 N.C. App. at 688-89, 366 S.E.2d at 885.

Here, Ms. McIntosh was put on notice by the trial court on 8 August 2005 that she needed to hire an attorney and be prepared to proceed with trial on 6 September 2005. She assured the trial court that she planned to hire an attorney within the week; although the record suggests that she was having financial difficulties, it also shows that these proceedings had been going on for over three years, and she had contributed to those delays.

In her order denying Ms. McIntosh's Rule 60 motion, the trial court recounted the long history of this case and also made numerous findings in concluding that Ms. McIntosh's failure to hire an attorney "[did] not rise to the level of excusable neglect." That nine-page order, with a timeline of the case and the trial transcript attached, included twenty-five relevant and detailed findings of fact and seven conclusions of law to support the trial court's denial of Ms. McIntosh's Rule 60 motion. Under those circumstances, we can find no abuse of discretion, as the trial court clearly made a well-reasoned decision based on her lengthy experience with these parties and this case. Accordingly, this assignment of error is overruled.

Affirmed.

Chief Judge MARTIN and Judge GEER concur.