PACIFIC MULCH, INC., R.E. FOY, G.R. CUNNINGHAM, MARK WILLIAMS, JOHN M. FOSTER and BOBBY D. OAKLEY, Plaintiffs,
v.
LARRY NEAL SENTER, Defendant.
No. COA07-1538
Court of Appeals of North Carolina
Filed October 7, 2008
This case not for publication
Williams Mullen Maupin Taylor, by Heather E. Bridgers and Camden R. Webb, for plaintiffs.
Hayes Hofler, P.A., by R. Hayes Hofler, for defendant.
ELMORE, Judge.

I. Background
In early 2004, Larry Senter (defendant) formed a company, Pacific Mulch, Inc. (Pacific Mulch or the company), along with Reginald E. Foy, George R. Cunningham, J. Mark Williams, John M. Foster, Bobby Oakley (together, plaintiffs), and Kathryn A. Bugg (now Blackburn). The company's articles of incorporation were filed with the Secretary of State on 9 July 2004. Foy, Cunningham, and Williams each contributed $123,000.00 and each received a twenty percent ownership interest in the company. Foster and Blackburn each contributed $61,500.00 and each received a ten percent ownership interest in the company. The company issued notes in the amounts of $123,000.00 and $61,500.00 back to Foy, Cunningham, Williams, Foster, and Blackburn. Defendant and Oakley contributed no cash in the form of equity or loans, but each receive a ten percent ownership in the company.
Defendant entered into an undated employment agreement with the company. The term of the agreement began 1 September 2004 and ended "1 September 2005, at which time the parties may agree upon an extension of this Agreement under the terms and conditions as may be mutually agreed upon." The agreement also stated that defendant "agrees to devote all of his employment efforts to the Corporation on a full-time basis and to not be otherwise employed," and that he would "receive an annual salary of $100,000. Said salary shall be paid in twelve equal month installments on or before the first of each month during the term of this Agreement." Oakley signed on behalf of the company.
In early July 2005, Foy asked defendant to meet him at a Raleigh Hardee's. Cunningham was with Foy and the two informed defendant that they were unhappy with his work performance and asked him to resign. They brought a letter of resignation for defendant to sign. Defendant refused. The letter of resignation stated that defendant would resign from his post as president of the company, "agree to return and sign over all of my stock in [the company] and agree to assign said stock certificates over to [the company] immediately." The letter also stated that defendant would "hold harmless and/or indemnify [the company], its officers, employees, and its shareholders for [his] resignation and actions." The letter concluded, "Any conversation regarding this resignation will be kept confidential between myself and the Board of Directors by all parties. The only exception to this would be conversations within the Board of Directors or the Corporation upon my resignation." It appears that Foy and Cunningham sought defendant's resignation and surrender of his shares without consulting the other shareholders or directors.
Within the next two weeks, defendant and Blackburn signed a different agreement (the contract) drafted by Foy which states, in relevant part:
We the undersigned (R.E. Foy, G.R. Cunningham, and Mark Williams) agree to allow Neil Senter and Katherine Blackburn, [sic] 30 days to find buyers/ investors for our shares in Pacific Mulch, Inc. We agree to sell these shares at that time for the same amount we have on loan at Pacific Mulch ($125,000.00 each for 20%, for a total of $375,000.00 for 60%) [sic] These investors will also sign off on and take legal responsibility for all loans presently secure [sic] by us to RBC Bank for Pacific Mulch.
If in 30 days Mr. Senter and Mrs. Blackburn have not found investors/ buyers, Mr. Senter will resign and turn in all of his shares in Pacific Mulch and Mrs. Blackburn will turn in all of her shares and be paid out the $62,500.00 she has on loan to Pacific Mulch. Neither will have anything else to do with Pacific Mulch and will pursue no further action against Pacific Mulch.
The agreement is not dated, but a handwritten note by Foy under the signature blocks states, "30 DAYS BEGINNING JULY 11, 2005." Defendant was released from his liability under the RBC bank loans as anticipated by the contract. The company's attorneys drafted a stock transfer agreement for defendant, which defendant refused to sign. The company, Foy, Cunningham, and Williams then sued defendant for breach of contract, specific performance, and, in the alternative, conversion, unjust enrichment, money had and received, and fraud. Defendant counter claimed for dissolution of the company under N.C. Gen. Stat. § 55-14-30(2), defamation, and attorneys' fees. He also filed a third-party complaint against Oakley and Foster, alleging that they were necessary parties to the counterclaim.
Plaintiffs moved for summary judgment on defendant's counterclaims, and the trial court dismissed defendant's counterclaims for defamation and attorneys' fees in a 16 March 2007 order.
Plaintiffs then moved "for a separate trial on Plaintiffs' claims for breach of contract and specific performance" pursuant to N.C. Gen. Stat. § 42(b)(1). They explained, "These claims, if proven, are dispositive [as] to all other claims in this case, and convenience would therefore be furthered by a separate trial." Regarding defendant's claim for dissolution, the motion alleged that defendant could not proceed on that claim
if the jury finds the contract to be valid. Specifically, if the contract is valid, then the release language in the contract applies and bars Defendant's claim for dissolution. Furthermore, because it is undisputed that Defendant did not surrender his shares, Defendant has no standing to seek dissolution if the jury finds that the contract is valid.
The trial court allowed plaintiff's motion. At the close of all of the evidence, the court granted plaintiffs' motion for a directed verdict on plaintiffs' breach of contract claims. The court also ruled that Pacific Mulch was a third-party beneficiary of the contract, denied plaintiffs' motion for directed verdict on defendant's defensive claim of duress, and denied defendant's motion for directed verdict on its claim of duress. The court sent a single issue, whether defendant entered into contracts with plaintiffs as a result of duress, to the jury. The jury answered in the negative and the court stated, "[I]t is not necessary for the Court to go forward on the claim for dissolution, subject to appellate rights. . . . And further motions."
The trial court entered its judgment on 26 April 2007, stating that as to the question of whether defendant entered into contracts with plaintiffs as a result of duress, the jury had answered "No." The judgment ordered defendant to surrender his shares in Pacific Mulch and taxed costs against defendant. Defendant moved for a new trial and for a judgment notwithstanding the verdict. The trial court denied both of those motions by order filed 22 May 2007.
Defendant appealed the 26 August 2007 judgment as well as the 22 May 2007 order. However, in his brief, defendant only argues that the trial court's 26 August 2007 judgment was in error. His assignments of error addressing the 22 May 2007 order are deemed abandoned.

II. Severance
Defendant first argues that the trial court abused its discretion by severing plaintiffs' contract issue from defendant's counterclaims asking the court to protect his minority shareholder rights under N.C. Gen. Stat. § 55-14-30(2). Defendant contends that "the alleged contracts were the very instruments by which plaintiffs tried to deprive defendant of his minority shareholder rights." We disagree.
"The severance of issues for separate trials is in the trial court's discretion, and its decision will not be reviewed absent abuse of discretion or a showing that the order affects a substantial right. The appellant must show that he suffered injury or prejudice from the severance." Ashley v. Delp, 59 N.C. App. 608, 610-11, 297 S.E.2d 905, 908 (1982) (citations omitted). An abuse of discretion is found only when "the trial court's decision was `unsupported by reason and could not have been the result of competent inquiry.'" McIntosh v. McIntosh, 184 N.C. App. 697, 702, 646 S.E.2d 820, 823 (2007) (quoting Wiencek-Adams v. Adams, 331 N.C. 688, 691, 417 S.E.2d 449, 451 (1992)).
Defendant alleges that he was prejudiced by the severance because "the jury was never allowed to hear that the alleged contract(s) were part of a larger concerted effort by plaintiffs to force [defendant] to give up valuable minority shareholder rights in violation of North Carolina law." Defendant contends that plaintiffs' actions frustrated his reasonable expectations as explained in the Supreme Court's opinion in Meiselman v. Meiselman, 309 N.C. 279, 307 S.E.2d 551 (1983). Meiselman sets out "the analysis a trial court is to apply in determining whether relief should be granted to a complaining shareholder seeking" dissolution under the North Carolina Business Corporation Act. Meiselman, 309 N.C. at 296, 307 S.E.2d at 562. However, a shareholder first "has the burden of proving that his `rights or interests' as a shareholder are being contravened." Id. at 297, 307 S.E.2d at 562. Here, plaintiffs alleged that defendant contracted away his rights or interests as a shareholder when he signed the contract and plaintiffs released defendant from his bank liability. Defendant remained a shareholder at the time he filed his dissolution counterclaim, but only because he was in breach of the contract.
Furthermore, after the trial court issued its ruling allowing the motion for separate trial, defense counsel urged the court to reconsider, stating:
I am going to have to present the same  almost the same evidence and the same arguments that I would if we were proceeding on the entire case. You know, we are going to have to  we are going to have to do this all over again the same  the same things all over again if the jury determines that there is no contract.
This statement undercuts defendant's contention on appeal that he was unable to present evidence of his prejudice.
Defendant also argues that he was prejudiced because the issue of duress presents a different legal standard than the issue of a minority shareholder's reasonable expectations: "The issue of duress . . . is narrow and does not permit consideration, except perhaps by happenstance, of the underlying concern for the reasonable expectations requirement, i.e., the illiquidity of a minority shareholder's interest rendering him vulnerable to exploitations by the majority shareholders." (Citation and quotations omitted.) Again, if the contract is valid, it stripped defendant of his minority shareholder rights; he contracted them away in exchange for the opportunity to buy out the other shareholders and his release from the bank liability.
Accordingly, we hold that the trial court did not abuse its discretion by granting plaintiffs' motion for separate trials; the decision was supported by reason and competent inquiry.

III. Directed Verdict
Defendant next argues that the trial court committed prejudicial error by directing a verdict in favor of plaintiffs on the issue of existence of a contract between the parties. Defendant argues that plaintiffs had the burden of proof and thus a directed verdict in their favor was improper. "A motion for directed verdict is appropriately granted only when by looking at the evidence in the light most favorable to the nonmovant, and giving the nonmovant the benefit of every reasonable inference arising from the evidence, the evidence is insufficient for submission to the jury." Crist v. Crist, 145 N.C. App. 418, 422, 550 S.E.2d 260, 264 (2001). We review a directed verdict for abuse of discretion. Id.
Defendant cites Cutts v. Casey, in which our Supreme Court asked whether a "trial judge can direct a verdict in favor of the party having the burden of proof when his right to recover depends upon the credibility of his witnesses." 278 N.C. 390, 417, 180 S.E.2d 297, 311 (1971). The Court stated that "the answer is NO." Id. Defendant contends that because plaintiffs had the burden of proof to show that a valid contract existed between the parties, a directed verdict was inappropriate under Cutts. However, the Supreme Court clarified that a witness's credibility is manifest, and thus not at issue under Cutts, "[w]here [the] non-movant establishes [the] proponent's case by admitting the truth of the basic facts upon which the claim of [the] proponent rests." Bank v. Burnette, 297 N.C. 524, 537, 256 S.E.2d 388, 396 (1979) (citations omitted). Here, however, only consideration was at issue and defendant admitted that he "would have benefited by finding [new] investors and getting those three men [Foy, Cunningham, and Williams] out of the company . . . ." He agreed that "the exchange was, [he] get[s] the opportunity to get the investors, get those three guys out of the company and [he] and Ms. Blackburn stay in . . . ."
Accordingly, we hold that the trial court did not abuse its discretion by granting a directed verdict to plaintiffs on the issue of the existence of a contract.

IV. Mutual Assent
Defendant last argues that the trial court committed prejudicial error by directing a verdict on plaintiffs' contract issues because mutual assent was not established. However, defendant did not assign error to this argument and "the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal . . . ." N.C.R. App. P. 10(a) (2007). Accordingly, this argument is outside the scope of our review and is dismissed.

V. Conclusion
For the reasons stated above, we affirm the judgment and error of the trial court.
Affirmed.
Judges HUNTER and ARROWOOD concur.
Report per Rule 30(e).