STATE OF NORTH CAROLINA v. CUSTODIO OLEA RAMIREZ

No. COA02-453

(Filed 4 March 2003)

## 1. Criminal Law— mistrial—other offenses on fingerprint card—curative instruction

The trial court did not err in an assault and attempted murder prosecution by not declaring a mistrial ex mero motu after the jury noticed that defendant's fingerprint card listed other charges which had been dismissed. The court cured any possibility of prejudice by instructing the jury not to consider the evidence.

## 2. Constitutional Law— effective assistance of counsel—failure to object and move for mistrial

An attempted murder and assault defendant was not denied effective assistance of counsel where his attorney did not object and move for a mistrial after the jury saw references to dismissed offenses on defendant's fingerprint card. The court gave a curative instruction and there was ample evidence to support the conviction.

## 3. Homicide— attempted murder—not abrogated by assault statute

Defendant was not afforded ineffective assistance of counsel in his attorney's failure to move to dismiss the common law charge of attempted murder on the theory that attempted murder was abrogated by N.C.G.S. § 14-32(a), assault with a deadly weapon with intent to kill inflicting serious injury. Attempted murder may occur through a multitude of circumstances.

## 4. Assault— bystander wounded—intent to kill

There was no plain error in the trial court's failure to dismiss a charge of assault with a deadly weapon with intent to kill inflicting serious injury upon a bystander, and defendant was not deprived of the effective assistance of counsel in his attorney's failure to move for the dismissal. Intent follows the bullet.

**5. Evidence— unavailable witness—testimony from bond hearing**

The trial court did not err in an assault prosecution by admitting the testimony of defendant's girlfriend from a bond hearing when the girlfriend was not available at trial. Defendant did not dispute her unavailability, but contended that the bond hearing raised different issues. Defendant had the same motive at the hearing as at trial to expand upon and possibly discredit her testimony, but chose to ask no questions.

**6. Sentencing— presumptive—mitigating factor—no findings**

The trial court did not err when sentencing defendant for assault and attempted murder by sentencing defendant within the presumptive range without making findings as to the mitigating factor of accepting responsibility. The court may in its discretion sentence defendant within the presumptive range without making findings regarding proposed mitigating factors.

**7. Sentencing— overlapping presumptive and aggravated range—no findings**

The trial court did not err when sentencing defendant for assault and attempted murder by imposing a sentence which fell into an overlapping presumptive and aggravating range without making findings required for the aggravating range.

**8. Constitutional Law— double jeopardy—assault and attempted murder**

Double jeopardy was not violated by consecutive sentences for assault and attempted murder. Each offense requires proof of at least one element that the other does not.

Appeal by defendant from judgments entered 6 December 2001 by Judge Abraham Penn Jones in Wake County Superior Court. Heard in the Court of Appeals 23 January 2003.

*Attorney General Roy Cooper, by Special Deputy Attorney General Richard E. Slipsky, for the State.*

*Cunningham, Dedmond, Petersen & Smith, L.L.P., by Bruce T. Cunningham, Jr., for defendant-appellant.*

CALABRIA, Judge.

Custodio Olea Ramirez ("defendant") was indicted by the Wake County Grand Jury on 17 September 2001 and was charged with

two counts of assault with a deadly weapon with intent to kill inflicting serious injury and one count of attempted murder. The case was tried before a jury at the 3 December 2001 session of Wake County Superior Court, Judge Abraham Penn Jones ("Judge Jones") presiding.

The evidence tended to show that between midnight and 1 a.m. on 29 July 2001 defendant slowly drove through the parking lot of the Top Rank Sports Bar ("the bar") on Poole Road in Raleigh. Approximately five minutes later, defendant again slowly drove through the parking lot, but this time he stopped and blocked the flow of traffic. After a few moments, Officer David Powell ("Officer Powell"), a Raleigh Police Detective working off-duty as a security officer for the bar, blinked his flashlight twice at defendant, indicating that he should move along because another car had pulled up behind defendant. Defendant did not move his car, and Officer Powell testified he then walked toward defendant to "tell the guy he needs to pull his car over so that the other car that's behind him can get by." Officer Powell further testified that when he had taken three or four steps and was six to ten feet away from the car, defendant raised his gun and "he just started firing off rounds as fast as he could."

Officer Powell was hit five times, including his right and left arms, his pelvic area, his left side near his waist, and his right leg. As a result, Officer Powell has nerve damage in his left arm and right leg, the bone in his left arm was shattered, his bladder was pierced, and he is now unable to walk without assistance of a cane. Officer Powell testified that he is able to stand as long as he keeps his right knee locked. Mr. Melvin Williams ("Mr. Williams") was a patron at the bar who was waiting outside the bar for a ride home when defendant began firing at Officer Powell. Mr. Williams was shot in the leg. Mr. Williams' leg was in a cast for six to eight weeks. Mr. Williams is an electrician, and his work has suffered because "[e]ven now if I stay on the ladder for awhile, I have to come down and for some reason my toe, it like—my big toe stays numb a lot." Defendant declined to offer evidence.

On 6 December 2001, the jury returned verdicts finding defendant guilty of all three charges. Judge Jones made no findings of aggravating or mitigating factors, and sentenced defendant within the presumptive range for each offense. Judge Jones sentenced defendant to 73 months to 97 months for each of the two convictions for assault with a deadly weapon with intent to kill inflicting serious

injury, and to 157 months to 198 months for attempted murder. Defendant appeals.

Defendant asserts (I) the trial court erred by failing to declare a mistrial, and his counsel provided ineffective assistance of counsel in violation of the Sixth Amendment to the Constitution of the United States by not requesting an instruction, when improper evidence was discovered by the jury. Defendant asserts (II) his counsel provided ineffective assistance of counsel by failing to move to dismiss the common law crime of attempted murder. Defendant further asserts the trial court erred by: (III) failing to dismiss the intent to kill element of the charge concerning Mr. Williams; (IV) admitting the transcript of Lisa Ruffin's ("Ms. Ruffin") testimony; and (V) sentencing defendant without finding that he accepted responsibility for his criminal conduct as a mitigating factor, without finding aggravating factors but imposing a sentence within the aggravated range, and imposing consecutive sentences for the assault and attempted murder charges.

## I. Improper Evidence of Dismissed Charges

[1] Defendant asserts both the trial court and his counsel erred when the jury noticed that a fingerprint card of defendant's fingerprints contained inadmissible evidence of three dismissed charges: assault with a deadly weapon with intent to kill inflicting serious injury; possession of stolen goods; and felony possession of cocaine. The jury noticed this information, and asked Judge Jones "Are the charges listed on page #2 [of the fingerprint card] relevant to this case? (Assault, felony possession of cocaine and possession of a stolen vehicle)." Judge Jones discussed the court's response with the attorneys, and defense counsel asserted:

Your Honor, in your response to that, the defendant's position to be as follows. The State made a motion to put that fingerprint card into evidence. There was no objection from the defendant. The Court allowed that card into evidence.

To now draw attention to the card or essentially telling the jury to ignore the card is in effect reopening the case for the purpose of removing a piece of evidence. We would object to you doing that.

What I would ask you to tell the jury, the card is in evidence for whatever value they want to give it and let it go at that.

The State responded that "if the defense doesn't feel there is a need for a curative instruction, then its not a problem for me and I don't mind if we not call any further attention to it." Judge Jones, disagreed with the attorneys,

> well, let me tell you my take on it. The question is are the charges listed on the card relevant. They asked a point blank question to which there is a point blank answer. The answer, as we all know, is no, absolutely not. . . . So Court's inclined to, despite the comments of two—you two learned attorneys, to tell the jury that it has no relevance, that it should be disregarded because that is the truth.

Defense counsel asked that his exception to the Court's decision be noted for the record. The Court instructed the jury:

> [A]re the charges listed on page two relevant to this case[?] The answer to that question is absolutely not. It has nothing to do with this case and these matters were brought up at a time of the incident, the State chose not to proceed on it and they have nothing to do with the case at hand.

Defendant asserts the trial court erred by not declaring a mistrial *ex mero motu.* "[U]pon his own motion, a judge may declare a mistrial if: (1) it is impossible for the trial to proceed in conformity with law." N.C. Gen. Stat. § 15A-1063 (2001). "This statute allows a judge . . . to grant a mistrial where he could reasonably conclude that the trial will not be fair and impartial." *State v. Lyons,* 77 N.C. App. 565, 566, 335 S.E.2d 532, 533 (1985). "An order of a mistrial on a motion of the court is 'addressed to the sound discretion of the trial judge, and his ruling on the motion will not be disturbed on appeal absent a gross abuse of that discretion.' " *Id.,* at 77 N.C. App. at 566, 335 S.E.2d at 533-34. (quoting *State v. Malone,* 65 N.C. App. 782, 785, 310 S.E.2d 385, 387 (1984) (citations omitted)). Moreover, the trial court may use a curative instruction to remove possible prejudice arising from improper material put before the jury. *See generally State v. Holmes,* 120 N.C. App. 54, 65, 460 S.E.2d 915, 922 (1995). There is no dispute that this evidence was inadmissible and improper for the jury. In this case, however, we do not find the jury's discovery of the former charges created a situation where the trial could not proceed in conformity with law. Rather, we find the court properly cured any possibility of prejudice by instructing the jury not to consider the inadmissible evidence. Therefore, we hold the court did not abuse its discretion by not declaring a mistrial.

**[2]** Defendant asserts that his counsel's decision not to object to the evidence and move for a mistrial constitutes ineffective assistance of counsel. "A stringent standard of proof is required to substantiate ineffective assistance claims. In fact, . . . relief based upon such claims should be granted only when counsel's assistance is 'so lacking that the trial becomes a farce and mockery of justice.' " *State v. Montford*, 137 N.C. App. 495, 502, 529 S.E.2d 247, 252, *cert. denied*, 353 N.C. 275, 546 S.E.2d 386 (2000) (quoting *State v. Pennell*, 54 N.C. App. 252, 261, 283 S.E.2d 397, 403 (1981) (citations omitted)). "[D]efendant must show that [(1)] his counsel's representation was deficient and [(2)] there is a reasonable possibility that, but for the inadequate representation, there would have been a different result." *State v. Maney*, 151 N.C. App. 486, 490, 565 S.E.2d 743, 746 (2002). "If this Court 'can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different,' we do not determine if counsel's performance was actually deficient." *State v. Frazier*, 142 N.C. App. 361, 368, 542 S.E.2d 682, 687 (2001) (quoting *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 249 (1985)).

We find no reasonable possibility that but for defense counsel's alleged errors another verdict would have been reached. Despite defense counsel's failure to object to the inadmissible evidence, the court gave a curative instruction, explaining that the evidence has "nothing to do with this case." Moreover, even had counsel objected and moved for a mistrial, such a motion must be granted by the court only if defense counsel shows that the error "result[ed] in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (2001). We do not find the jury's discovery that defendant was originally charged with different crimes than those he faced at trial resulted in substantial and irreparable prejudice to defendant's case. Moreover, even considering counsel's failure to make this motion a deficiency, there is ample evidence to support the convictions in this case. Therefore, even if defense counsel had objected to the evidence and moved for a mistrial, defendant has failed to meet his burden of showing a reasonable possibility exists that a different result would have been reached. We hold there was no violation of defendant's right to effective assistance of counsel.

II. Abrogation of the Common Law Crime of Attempted Murder

**[3]** Defendant asserts he was afforded ineffective assistance of counsel when his counsel failed to move to dismiss the common law

charge of attempted murder arguing the charge was abrogated by N.C. Gen. Stat. § 14-32(a), assault with a deadly weapon with intent to kill inflicting serious injury. "[D]efendant must show that [(1)] his counsel's representation was deficient and [(2)] there is a reasonable possibility that, but for the inadequate representation, there would have been a different result." *Maney*, 151 N.C. App. at 490, 565 S.E.2d at 746. If counsel's failure to move to dismiss the charges on the grounds of abrogation amounts to deficient representation, then we find we must conclude a reasonable possibility exists that a different result might have been reached and defendant would not have been convicted of all the charges. Therefore, the question for the Court is whether defense counsel's representation was deficient and "fell below an objective standard of reasonableness." *State v. McMillian*, 147 N.C. App. 707, 714, 557 S.E.2d 138, 144 (2001), *disc. review denied*, 355 N.C. 219, 560 S.E.2d 152 (2002).

To consider whether counsel's representation was deficient, we must determine whether counsel erred by not moving for dismissal of the charge based on abrogation. "All such parts of the common law . . . not abrogated, repealed or . . . obsolete, are hereby declared to be in full force within this State." N.C. Gen. Stat. § 4-1 (2001). "[W]hen [the General Assembly] elects to legislate in respect to the subject matter of any common law rule, the statute supplants the common law rule and becomes the public policy of the State in respect to that particular matter." *McMichael v. Proctor*, 243 N.C. 479, 483, 91 S.E.2d 231, 234 (1956).

Defendant asserts the adoption of the assault statute abrogated the offense of attempted murder because they address the same subject matter. We disagree. While a person might attempt to murder another person by assaulting that person, with the intent to kill, using a deadly weapon and thereby inflict serious injury, a person need not do so to commit the crime of attempted murder. Attempted murder is a crime that may occur through a multitude of circumstances, requiring simply (1) intent to kill and (2) an overt act which is more than mere preparation and committed with malice, premeditation, and deliberation. *State v. Gartlan*, 132 N.C. App. 272, 275, 512 S.E.2d 74, 76-77 (1999). We find no support for the proposition that the General Assembly intended to abrogate the crime of attempted murder with the assault statute, thereby limiting the crime of attempted murder to those situations where the assailant assaults the victim with a deadly weapon, intending to kill him, but only succeeds in inflicting serious bodily injury. We hold defendant is incorrect in his assertion that the

General Assembly abrogated attempted murder with the crime of assault with a deadly weapon with intent to kill inflicting serious injury. Since we disagree with defendant's assertion of abrogation, we hold his counsel was not deficient in his representation and did not provide ineffective assistance of counsel by not presenting this argument to the trial court.

### III. Intent to Kill

[4] Defendant asserts the trial court committed plain error by failing to dismiss the intent to kill element with respect to the charge for assault with a deadly weapon with intent to kill inflicting serious injury upon Mr. Williams. Defendant argues that since he was charged with the intent to kill element for Officer Powell, he should not also face this element with Mr. Williams, a mere bystander whom he never intended to shoot. Defendant further asserts that his counsel's failure to move to dismiss the charge based on insufficiency of the evidence for the intent to kill element amounts to ineffective assistance of counsel.

Plain error is error "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987). "To satisfy the requirements of the plain error rule, the Court must find error, and that if not for the error, the jury would likely have reached a different result." *State v. Holmes*, 120 N.C. App. 54, 64, 460 S.E.2d 915, 921 (1995). Similarly, to properly assert a claim of ineffective assistance of counsel, defendant must show his counsel's representation was deficient and that there is a reasonable possibility that but for the deficient representation there would have been a different result. *Maney*, 151 N.C. App. at 490, 565 S.E.2d at 746.

In this case, we find neither the trial court nor defendant's counsel erred.

"It is an accepted principle of law that where one is engaged in an affray with another and unintentionally kills a bystander or a third person, his act shall be interpreted with reference to his intent and conduct towards his adversary. Criminal liability, if any, and the degree of homicide must be thereby determined. Such a person is guilty or innocent exactly as [if] the fatal act had caused the death of his adversary. It has been aptly stated that 'The malice or intent follows the bullet.' "

*State v. Locklear*, 331 N.C. 239, 245, 415 S.E.2d 726, 730 (1992) (quoting *State v. Wynn*, 278 N.C. 513, 519, 180 S.E.2d 135, 139 (1971) (citations omitted)). In *Locklear*, defendant shot and killed an estranged girlfriend, and hit the girlfriend's daughter in the neck with a stray bullet. Defendant was convicted of first degree murder of his girlfriend and assault with intent to kill inflicting serious injury upon the daughter. The Court upheld the conviction, noting that defendant could be convicted for separate crimes involving his intent to kill since "it is immaterial whether the defendant intended injury to the person actually harmed; if he in fact acted with the required or elemental intent toward someone, that intent suffices as the intent element of the crime charged as a matter of substantive law." *Locklear*, 331 N.C. at 245, 415 S.E.2d at 730 (1992). Moreover, this Court recently upheld the convictions of two counts of attempted first degree murder and two counts of assault with a deadly weapon with intent to kill inflicting serious injury where defendant ran down his estranged wife and also struck a by-stander. *State v. Andrews*, —— N.C. App. ——, ——, —— S.E.2d ——, —— COA01-1305 (12-17-2002). The Court explained that "[b]ecause defendant acted with the specific intent to kill [the wife], evidence of that intent could properly serve as the basis of the intent element of the offense against [the bystander]." *Id.*, —— N.C. App. at ——, —— S.E.2d at ——. Accordingly, we hold that defendant's counsel did not err by failing to move to dismiss and the trial court did not err in failing to dismiss the charge of intent to kill with regards to the assault upon Mr. Williams.

## IV. Admission of Transcript Testimony

[5] Defendant asserts the trial court erred in admitting the former testimony of defendant's girlfriend, Ms. Ruffin, which was taken at a bond hearing in this case. Ms. Ruffin testified that earlier in the evening of the night in question, defendant fought with her, hit her in the face, and shot at the ground with a gun. Defendant asserts the testimony should have been excluded as hearsay. The State asserts the testimony was properly admitted pursuant to N.C. Gen. Stat. § 8C-1, Rule 804(b)(1) (2001).

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801 (c) (2001). "Hearsay is not admissible except as provided by statute or by these rules." N.C. Gen. Stat. § 8C-1, Rule 802 (2001).

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (1) Former Testimony. — Testimony given as a witness at another hearing of the same or a different proceeding . . . if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

N.C. Gen. Stat. § 8C-1, Rule 804(b)(1). Therefore,

[t]estimony taken at a prior proceeding is admissible when (1) the witness is unavailable; (2) the proceeding at which the former testimony was given was a former trial of the same cause, or a preliminary stage of the same cause, or the trial of another cause involving the issue and subject matter at which the testimony is directed; and (3) the current defendant was present at the former proceeding and was represented by counsel.

*State v. Chandler*, 324 N.C. 172, 181, 376 S.E.2d 728, 734 (1989).

Defendant does not dispute the witness' unavailability, but asserts the bond hearing raised different issues than the trial, and therefore defendant did not have "an opportunity and similar motive" to cross-examine the witness. We disagree. The testimony was taken at a preliminary stage of this case, and defendant had the same motive at that time as he would have had at trial, to expand upon and possibly discredit Ms. Ruffin's testimony. Defendant chose to ask no questions. Therefore, we hold, pursuant to Rule 804(b)(1), the trial court did not err in admitting the former testimony of Ms. Ruffin.

## V. Imposition of Sentence

**[6]** Defendant asserts the trial court erred by failing to find as a mitigating factor that defendant "has accepted responsibility for the defendant's criminal conduct." N.C. Gen. Stat. § 15A-1340.16(e)(15) (2001). "[T]he offender bears the burden of proving by a preponderance of the evidence that a mitigating factor exists." N.C. Gen. Stat. § 15A-1340.16(a) (2001). "The court shall consider evidence of aggravating or mitigating factors . . . but the decision to depart from the presumptive range is in the discretion of the court." *Id.* "The court shall make findings of the aggravating and mitigating factors present in the offense only if, in its discretion, it departs from the presumptive range of sentences." N.C. Gen. Stat. § 15A-1340.16(c) (2001). Since the court may, in its discretion, sentence defendant within the

presumptive range without making findings regarding proposed miti-
gating factors, we hold the trial court did not err by sentencing
defendant within the presumptive range without making findings as
to this mitigating factor.

[7] Defendant further asserts the trial court erred by imposing sen-
tences which fall into the aggravated range without finding aggra-
vated factors. Defendant admits the trial court sentenced defendant
within the presumptive range, but asserts that because the presump-
tive range and the aggravated range overlap, an offender may not be
sentenced within this overlapping range without a finding that aggra-
vating factors outweigh mitigating factors. Defendant asserts this
overlap is a quirk in our sentencing laws and creates an ambiguity.
This argument was also presented by the defendant in *State v.
Streeter*, 146 N.C. App. 594, 553 S.E.2d 240 (2001), *cert. denied*, 356
N.C. 312, 571 S.E.2d 211 (2002). In accord with *Streeter*, we disagree
with defendant's argument. In both *Streeter* and the case at bar, the
defendant was properly sentenced within the presumptive range. The
fact that the trial court could have found aggravating factors and sen-
tenced defendant to the same term does not create an error in
defendant's sentence. We hold the statute is not ambiguous, and
accordingly find no error.

[8] Defendant asserts the trial court violated defendant's right to be
free of double jeopardy secured by the Fifth and Fourteenth
Amendments to the United States Constitution by imposing consecu-
tive sentences for the attempted murder and two assault with a
deadly weapon with intent to kill inflicting serious injury convictions.
We disagree. In *State v. Peoples*, 141 N.C. App. 115, 120, 539 S.E.2d 25,
29 (2000), this Court held that separate sentences for attempted first
degree murder and assault with a deadly weapon with intent to kill
inflicting serious injury does not constitute double jeopardy "because
each offense requires proof of at least one element that the other
does not." Accordingly, we hold the trial court did not err in ordering
consecutive sentences.

No error.

Judges McGEE and HUNTER concur.