STATE OF NORTH CAROLINA v. DAVID ONEAL TWITTY

No. COA10-1320

(Filed 17 May 2011)

**1. Evidence— subsequent crimes or bad acts—failure to show prejudice**

The trial court did not err in an obtaining property by false pretenses case by admitting evidence of defendant obtaining money from other churches. Defendant failed to show how he was prejudiced by his trial counsel's failure to object to these subsequent bad acts that were admissible under N.C.G.S. § 8C-1, Rule 404(b).

**2. Criminal Law— prosecutor's argument—defendant a con man, liar, and parasite—no contradictory evidence**

The trial court did not abuse its discretion in an obtaining property by false pretenses case by failing to intervene *ex mero motu* during the State's closing argument referring to defendant as a con man and a liar because these terms accurately described the offense. Although calling defendant a parasite was unnecessary and unprofessional, it did not rise to the level of gross impropriety. Further, the prosecutor's comment that there was no evidence to contradict the State's evidence was not a reference to defendant's right to remain silent.

**3. False Pretense—obtaining property by false pretenses—motion to dismiss—sufficiency of evidence**

The trial court did not err in an obtaining property by false pretenses case by denying defendant's motions to dismiss. The evidence taken in the light most favorable to the State supported a conclusion that defendant was telling a false story about his wife dying in order to elicit sympathy and obtain property.

**4. Constitutional Law— right to speedy trial—waiver of review—pro se motion while represented by counsel**

The trial court did not deprive defendant of his right to a speedy trial. Defendant waived appellate review of this issue by filing *pro se* motions for a speedy trial while represented by counsel. Further, defendant failed to show actual substantial prejudice in the delay between his arrest and trial.

**5. Sentencing— aggravated range—findings not required when also within presumptive range**

The trial court did not err in an obtaining property by false pretenses case by sentencing defendant in the aggravated range without finding any aggravating factors. Defendant's sentence straddling both the presumptive and aggravated ranges did not create any ambiguity.

Judge STEELMAN concurring in separate opinion.

Appeal by Defendant from judgment entered 15 April 2010 by Judge Paul Gessner in Alamance County Superior Court. Heard in the Court of Appeals 13 April 2011.

*Attorney General Roy Cooper, by Special Deputy Attorney General Thomas R. Miller, for the State.*

*John T. Hall for Defendant.*

STEPHENS, Judge.

*Procedural and Factual History*

On 29 June 2009, Defendant David O'Neal Twitty[1] was indicted for obtaining property by false pretense and having attained the status of habitual felon. On 20 July 2009, Defendant, acting pro se, moved for a "speedy trial." A superseding indictment was returned on 4 January 2010 for the same charge.

The evidence at trial tended to show the following: On 22 February 2009, Defendant presented himself and a man he claimed was his son to the congregation of Mt. Olive Baptist Church in Alamance County. He claimed that his wife had died in a car accident in Greensboro and that he and his son had traveled to Greensboro from their home in Charleston, South Carolina, to retrieve her possessions. Defendant stated that he had no food, was almost out of gas, and had only 75 cents left. Defendant then broke down in tears and asked church members for money to help him get back to South Carolina. Moved by Defendant's story, several members of the congregation gave Defendant money or gas for his car.

Defendant's story was not true. He lived in Charlotte, not Charleston, and his only known (ex-)wife was still living and testified

---

1. Defendant's middle name is spelled "O'Neal" in his brief and most other documents in the record on appeal, but spelled without the apostrophe on the judgment form.

at trial. Evidence was also presented that Defendant told the same story later that day to the congregation of nearby Mitchell Chapel A.M.E. Zion Baptist Church in Pittsboro and on later dates at three other churches in North Carolina and Virginia. In each case, Defendant asked for help and received money from sympathetic church members.

The jury found Defendant guilty of obtaining property by false pretense and found that he had attained the status of habitual felon. Defendant was sentenced to 151 to 191 months in prison. Defendant appeals.

Defendant makes five arguments on appeal: that the trial court erred in (I) admitting evidence of his obtaining money from other churches; (II) allowing prosecutorial misconduct during the State's closing argument; (III) denying his motions to dismiss; (IV) depriving him of a speedy trial; and (V) sentencing him in the aggravated range. As discussed herein, we conclude that Defendant received a fair trial free of error.

### Admission of Rule 404(b) Evidence

**[1]** Defendant first argues that the trial court erred in admitting evidence of his obtaining money from other churches. We disagree.

Defendant's arguments on this issue are disjointed, but he appears to contend that the trial court should not have admitted evidence that Defendant told the same false story to obtain money at several churches *after* the incident at Mt. Olive Baptist Church for which he was charged. Defendant states that, because the evidence concerned his *subsequent* bad acts, it was not properly admitted under Rule 404(b). Defendant also states that the evidence had no purpose other than "character assassination."

Under Rule of Evidence 404(b):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2009). Rule 404(b) is a rule of inclusion, allowing the admission of such evidence unless its "*only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged."

*State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990) (emphasis in original). Evidence of both prior and subsequent bad acts by a defendant is admissible under Rule 404(b). *State v. Hutchinson*, 139 N.C. App. 132, 136, 532 S.E.2d 569, 572 (2000). In making a determination under Rule 404(b), the trial court must consider the similarity and temporal proximity of the defendant's other acts. *State v. Barnett*, 141 N.C. App. 378, 389-90, 540 S.E.2d 423, 431 (2000), *appeal dismissed, disc. review denied*, 353 N.C. 526, 549 S.E.2d 552, *affirmed*, 354 N.C. 350, 554 S.E.2d 644 (2001). However, evidence admissible under Rule 404(b) can be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* N.C. Gen. Stat. § 8C-1, Rule 403 (2009). This decision is left to the trial court's sound discretion. *State v. Stager*, 329 N.C. 278, 315, 406 S.E.2d 876, 897 (1991).

Here, the trial court admitted evidence, over Defendant's objection, that Defendant told a similar false story and asked for money at numerous churches for the purpose of showing a common plan or scheme, a purpose permitted under Rule 404(b). As noted above, evidence of subsequent bad acts is treated no differently than evidence of prior bad acts under Rule 404(b). The subsequent acts here were highly similar and occurred within a month of the offense for which Defendant was charged, indicating that the evidence was highly probative. We thus conclude that the evidence was properly admitted, and we see no abuse of discretion in the trial court's determination that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice to Defendant.

Defendant also states that, to the extent his trial counsel failed to object to some of the evidence of his subsequent bad acts, he received ineffective assistance of counsel. However, Defendant does not make any argument that he was prejudiced by the performance of his trial counsel, instead simply citing the cases that establish the test for ineffective assistance. Thus, he cannot show ineffective assistance of counsel. *See State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (holding that a defendant claiming ineffective assistance of counsel must show that (1) his attorney's performance was constitutionally deficient and (2) the deficiency deprived the defendant of a fair trial). Defendant's arguments are overruled.

### Alleged Prosecutorial Misconduct

[2] Defendant also argues that the trial court erred in allowing prosecutorial misconduct during the State's closing argument. We disagree.

Here, during closing argument, the prosecutor referred to Defendant as a con man, a liar, and a parasite. Defendant characterizes these references as prosecutorial misconduct. Defendant did not object to any of these remarks at trial, but now contends that the trial court should have intervened *ex mero motu*.

Appellate courts "will not find error in a trial court's failure to intervene in closing arguments *ex mero motu* unless the remarks were so grossly improper they rendered the trial and conviction fundamentally unfair." *State v. Raines*, 362 N.C. 1, 14, 653 S.E.2d 126, 134 (2007) (quotation marks and citations omitted), *cert. denied*, —— U.S. ——, 174 L. Ed. 2d 601 (2007). "[O]nly an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken." *State v. Mann*, 355 N.C. 294, 307, 560 S.E.2d 776, 785 (2002) (citations and quotation marks omitted), *cert. denied*, 537 U.S. 1005, 154 L. Ed. 2d 403 (2002). Further, it is not improper for the State to refer to a defendant in terms that reflect the offense which has been charged or the evidence presented at trial. For example, in "a trial for first-degree murder involving a calculated armed robbery and an unprovoked killing, it [is] not improper for the State to refer to [the] defendant as 'cold-blooded murderer.' " *State v. Harris*, 338 N.C. 211, 229-30, 449 S.E.2d 462, 472 (1994) (also finding no impropriety in the State's reference to the defendant as a "doper" where evidence showed that the defendant had a history of drug abuse).

Here, Defendant was charged with obtaining property by false pretense, an offense which by definition is committed by deceiving or lying in order to win the confidence of victims. The evidence presented tended to show that Defendant lied to a church congregation in order to convince them to give him money. As in *Harris*, we see no impropriety in the State's reference to Defendant as a liar and con man, as those terms accurately characterize the offense with which he was charged and the evidence presented at trial. As for the term "parasite," this name-calling by the State was unnecessary and unprofessional, but does not rise to the level of gross impropriety. *Compare State v. Matthews*, 358 N.C. 102, 111, 591 S.E.2d 535, 542 (2004) (awarding a new trial for other reasons, but noting in *dicta* the impropriety of references to the defendant as a "monster," "demon," "devil," "a man without morals" and as having a "monster mind"); *State v. Walters*, 357 N.C. 68, 105, 588 S.E.2d 344, 366 (holding the State

improperly compared the defendant to Hitler), *cert. denied*, 540 U.S. 971, 157 L. Ed. 2d 320 (2003); *State v. Jones*, 355 N.C. 117, 132-33, 558 S.E.2d 97, 103-105 (2002) (vacating the defendant's death sentence where the State improperly compared the victim to those killed at Columbine High School and in the Oklahoma City Federal Building bombing); *State v. Smith*, 279 N.C. 163, 165-67, 181 S.E.2d 458, 459-60 (1971) (reversing the defendant's rape conviction where the State improperly described the defendant as "lower than the bone belly of a cur dog").

Defendant also notes that the prosecutor remarked several times that there was "no evidence to contradict" evidence presented by the State. Defendant contends that these comments constituted a reference to his decision not to testify in violation of his rights under the United States and North Carolina Constitutions. We do not believe that these comments constituted a reference to Defendant's right to remain silent. In addition, it is well established that, on appeal, we will not consider constitutional arguments not raised and passed on in the trial court. *In re Adoption of Searle*, 82 N.C. App. 273, 277, 346 S.E.2d 511, 515 (1986). Because Defendant did not make his constitutional argument regarding his right not to testify below, we will not consider it here.

Defendant again raises ineffective assistance of counsel based on his trial counsel's failure to object to comments of the prosecutor as an alternative basis to support his position. However, again, Defendant makes no argument that he was prejudiced by the performance of his trial counsel, and, thus, he cannot show ineffective assistance of counsel. *See Braswell*, 312 N.C. at 562, 324 S.E.2d at 248. Defendant's arguments are overruled.

### *Motions to Dismiss*

**[3]** Defendant next argues that the trial court erred in denying his motions to dismiss. Specifically, Defendant contends that the trial court erred in (1) failing to dismiss the original indictment after a superseding indictment was returned, (2) denying his motion to dismiss the subsequent indictment because it alleged that Defendant obtained property by false pretense "from THE CONGREGATION OF MT. OLIVE BAPTIST CHURCH" which is too vague to sustain a conviction, and (3) denying his motion to dismiss where there was insufficient evidence that he asked for money or made false representations. We disagree with each of these assertions.

Defendant was indicted on 29 June 2009 for obtaining property by false pretense, and a superseding indictment was returned on 4 January 2010 for the same charge. Defendant filed several *pro se* motions to dismiss, but none of those requested dismissal of the original indictment or argued that the indictment was flawed. At a 13 April 2010 hearing just before trial began, defense counsel stated that he was "adopting" some of Defendant's *pro* se motions, but did not request dismissal of the original indictment.

Our General Statutes provide, in pertinent part:

> If at any time before entry of a plea of guilty to an indictment or information, or commencement of a trial thereof, another indictment or information is filed in the same court charging the defendant with an offense charged or attempted to be charged in the first instrument, the first one is, with respect to the offense, superseded by the second and, upon the defendant's arraignment upon the second indictment or information, the count of the first instrument charging the offense must be dismissed by the superior court judge.

N.C. Gen. Stat. § 15A-646 (2009). However,

[a]lthough the better practice and, indeed, the required practice under the statute is for the trial court to dismiss *any* prior indictments charging an offense upon the arraignment of the defendant on a superseding indictment charging the same offense, the failure of the trial court to do so does not render the superseding indictment void or defective.

*State v. Carson*, 320 N.C. 328, 333, 357 S.E.2d 662, 666 (1987). Accordingly, Defendant's argument on this issue is overruled.

Prior to trial, Defendant's counsel moved to dismiss the obtaining property by false pretense charge, stating:

> Specifically, Your Honor, I'm asserting that the congregation of Mt. Olive Baptist Church is not any proper persons [sic] or group or entity in which the statute defines as individuals who pursuant to statute could be victims of obtaining property by false pretense.

Defense counsel and the trial court then engaged in discussion, all of which focused on whether the relevant statutory language permitted the offense to be committed against a "congregation." Section 14-100 of our General Statutes provides, in pertinent part:

> If any person shall knowingly and designedly by means of any kind of false pretense whatsoever, whether the false pretense is of a past or subsisting fact or of a future fulfillment or event, obtain or attempt to obtain from any person within this State any money, goods, property, services, chose in action, or other thing of value with intent to cheat or defraud any person of such money, goods, property, services, chose in action or other thing of value, such person shall be guilty of a felony[.]

N.C. Gen. Stat. § 14-100(a) (2009). Subsection (c) goes on to offer the following definition: "For purposes of this section, 'person' means person, association, consortium, corporation, body politic, partnership, or other group, entity, or organization." N.C. Gen. Stat. § 14-100(c). The trial court quoted this language from subsection (c) in overruling Defendant's motion to dismiss. In his brief, Defendants' argument is based on the possibility of double jeopardy and his assertion that the indictment was "unconstitutionally vague." However, before the trial court, Defendant did not make any constitutional argument or assert either unconstitutional vagueness or risk of double jeopardy. Because Defendant failed to raise these constitutional arguments at trial, we will not consider them on appeal. *See In re Adoption of Searle,* 82 N.C. App. at 277, 346 S.E.2d at 515.

At the close of the State's evidence, Defendant moved to dismiss, contending that there was insufficient evidence that Defendant asked for anything besides "help" or that his representations about his wife having just died in a car accident were false. Defendant renewed this motion at the close of all evidence.

We review the denial of a motion to dismiss in a criminal trial to see "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense." *State v. Powell,* 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith,* 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Barnes,* 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) (citation omitted). The elements of obtaining property by false pretense are: "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended

to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." *State v. Cronin*, 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980).

Here, the testimony tended to show that Defendant visited several churches within a period of less than two months, telling a story that his wife had just died and he lacked the money, food, and gas to get home. Pastor Shelby Stevens of Mt. Olive Baptist testified that Defendant told his congregation that his wife had just died, he had collected her belongings in Greensboro, had little gas and only 75 cents in his pocket, and had to get home to Charleston. Joan Snyder and Keith Andrews, members of the congregation, testified that Defendant said his wife had died in a car accident. Andrews also testified:

> Well, I accept the fact that he quoted some scripture. Said he needed money and his wife had been killed and him [sic] and Travis was [sic] on the way back to get her belongings and headed back. And he just give [sic] a heart wrenching story to the fact that he was crying and needed money.

As a result of hearing Defendant's story, Andrews gave him some gasoline.

A number of witnesses offered evidence under Rule 404(b). Pastor Kenneth Brooks, pastor of the Mitchell Chapel A.M.E. Zion Baptist Church in Pittsboro, testified that on the afternoon of 22 February 2009, Defendant appeared at his church service and told a similar story, asking for help, and that the pastor and others had given him money. Vance Blanton, a member of the Church of Christ of Sanford, testified that Defendant appeared at that church on 1 March 2009, told members that his wife had died in an accident in Pittsboro, and he needed gas money; the members gave him at least $80. Pastor Scott Wilson of Tramway Baptist Church in Sanford testified that on the first or second Sunday in March 2009, Defendant appeared at his church: "He said that his wife had died and that he and his son, Travis, were driving through Pittsboro to try to get some belongings that she had and that they needed some help." Wilson gave Defendant money and gas, and a member of the congregation gave him $100. Lydia Craven, a member of Culdee Presbyterian Church in West End, testified that Defendant came to her church in March 2009 and told the congregation that his wife had been killed in Lee County. Craven and others gave him money. Cassius Eugene Horton, Jr., pastor of the Galax First Assembly of God Church in Galax, Virginia, testified that, on 22 March 2009, Defendant appeared at his church and told the con-

gregation his wife had been killed in Roanoke, Virginia, and that he needed gas to get back to his home in North Carolina.

In sum, Keith Andrews specifically testified that Defendant asked for gas money. Further, Defendant told various congregations, over a period of two months, that his wife had died in various locations in North Carolina and in Virginia. This evidence, taken in the light most favorable to the State and giving the State the benefit of all reasonable inferences, is substantial evidence which could support a conclusion by a reasonable juror that Defendant was telling a false story about his wife dying in order to elicit sympathy and obtain property. Defendant's arguments on this issue are overruled.

### Motion for a Speedy Trial

[4] Defendant also argues that the trial court deprived him of a speedy trial. We disagree.

Defendant was arrested on 24 March 2009 and tried 13 months later in April 2010. Defendant, *pro se*, requested a speedy trial by letter filed 20 July 2009 asserting his Sixth Amendment rights under the United States Constitution, and renewed his request by letter filed 9 December 2009. On 18 February 2010, Defendant moved to dismiss for failure to grant him a speedy trial, citing both the Sixth Amendment and N.C. Gen. Stat. § 15A-711(c). On 4 May 2009, the trial court appointed counsel for Defendant. Defendant's original counsel later moved to withdraw, and the trial court appointed replacement counsel for Defendant on 1 October 2009. Thus, Defendant was represented by counsel when each of his speedy trial filings was made. At a 13 April 2010 pretrial hearing, defense counsel stated that he was "adopting" some of Defendant's *pro se* motions, but did not mention the issue of Defendant's right to a speedy trial.

"[A] defendant does not have the right to be represented by counsel and to also appear *pro se.*" *State v. Spivey,* 357 N.C. 114, 121, 579 S.E.2d 251, 256 (2003) (citation omitted). "Having elected for representation by appointed defense counsel, [a] defendant cannot also file motions on his own behalf or attempt to represent himself. [A d]efendant has no right to appear both by himself and by counsel." *State v. Grooms,* 353 N.C. 50, 61, 540 S.E.2d 713, 721 (2000) (citing N.C. Gen. Stat. § 1-11), *cert. denied,* 534 U.S. 838, 151 L. Ed. 2d 54 (2001). A defendant who files *pro se* motions for a speedy trial while represented has "waived appellate review of this issue by failing to properly raise the constitutional issue in the trial court." *Id.* at 62, 540 S.E.2d at 721.

Even had Defendant not waived his right of appellate review on this issue, he would not prevail. Under section 15A-711(c), the statute cited in one of Defendant's filings,

> [a] defendant who is confined in an institution in this State pursuant to a criminal proceeding and who has other criminal charges pending against him may, by written request filed with the clerk of the court where the other charges are pending, require the prosecutor prosecuting such charges to proceed pursuant to this section.

N.C. Gen. Stat. § 15A-711(c) (2009). This section does not apply to Defendant, who had no other criminal charges pending against him at the time he was confined and awaiting trial.

In reviewing a constitutional claim for denial of the right to a speedy trial, we consider four factors: the length and reason for the delay, the defendant's assertion of his right, and any prejudice resulting from the delay. *Spivey*, 357 N.C. at 118, 579 S.E.2d at 254. None of these factors is dispositive, and there is no mandated method of weighing them. *Id.* at 118, 579 S.E.2d at 255. Rather, an appellate court must engage in a balancing test based on the facts of each case. *Id.*

As to the first factor, the length of delay, no delay is *per se* determinative of a constitutional violation, but delays approaching one year have been considered significant enough to trigger an inquiry into the remaining factors. *Id.* at 119, 579 S.E.2d at 255. However, regarding the second factor, the cause of delay, a "defendant has the burden of showing that the delay was caused by the neglect or *willfulness* of the prosecution." *Id.* (emphasis in original). Here, Defendant made no allegation regarding any cause of the delay in his pretrial filings. In his brief, Defendant states that his first court-appointed lawyer was not authorized to represent defendants charged with class C felonies, such as himself, and that he was not appointed replacement counsel until October 2009, six months after his arrest. However, the prosecution does not control appointment of defense counsel and, thus, Defendant makes no argument that "the delay was caused by the *neglect* or *willfulness* of the prosecution." *Id.*

As discussed above, Defendant did not properly assert his right to a speedy trial, the third factor under *Spivey*. Regarding the fourth factor, prejudice, Defendant's only assertion of prejudice in his brief is that he was experiencing "anxiety and concern over his charges." While minimizing the anxiety and concern of defendants is one of the

motivations behind the constitutional right to a speedy trial, a "defendant must show actual, substantial prejudice." *Id.* at 122, 579 S.E.2d at 257. Our Supreme Court has held that "claims of faded memory and evidentiary difficulties[, being] inherent in *any* delay[,]" do not establish actual, substantial prejudice. *State v. Goldman*, 311 N.C. 338, 345, 317 S.E.2d 361, 365 (1984). Similarly, we conclude that, because most criminal defendants likely experience "anxiety and concern" over their charges, Defendant here has failed to show actual, substantial prejudice in the delay between his arrest and trial. This argument is overruled.

*Sentencing*

**[5]** Finally, Defendant argues that the trial court erred in sentencing him in the aggravated range without finding any aggravating factors. We disagree.

Defendant was convicted of obtaining property by false pretense, a class C felony, and the trial court sentenced Defendant to 151 to 191 months in prison. A term of 151 months is the top of the presumptive range for a defendant with a prior record level of V convicted of a class C felony, and is also listed as the lowest sentence in the aggravated range. Defendant contends that this creates ambiguity and asserts that he received an aggravated sentence.

We rejected this argument in *State v. Ramirez*, 156 N.C. App. 249, 576 S.E.2d 714, *disc. review denied*, 357 N.C. 255, 583 S.E.2d 286, *cert. denied*, 540 U.S. 991, 157 L. Ed. 2d 388 (2003), and subsequent cases, none of which are cited in Defendant's brief. *See State v. Allah*, 168 N.C. App. 190, 607 S.E.2d 311, *disc. review denied*, 359 N.C. 636, 618 S.E.2d 232 (2005); *State v. Fowler*, 157 N.C. App. 564, 579 S.E.2d 499 (2003). In *Ramirez*, the defendant asserted that

> the trial court erred by imposing sentences which fall into the aggravated range without finding aggravate[ing] factors. [The] [d]efendant admits the trial court sentenced [the] defendant within the presumptive range, but asserts that because the presumptive range and the aggravated range overlap, an offender may not be sentenced within this overlapping range without a finding that aggravating factors outweigh mitigating factors. [The] [d]efendant asserts this overlap is a quirk in our sentencing laws and creates an ambiguity. This argument was also presented by the defendant in *State v. Streeter*, 146 N.C. App. 594, 553 S.E.2d 240 (2001), *cert. denied*, 356 N.C. 312, 571 S.E.2d 211 (2002). In accord with Streeter, we disagree with [the] defendant's argument. In both *Streeter* and the case at bar, the defendant was

properly sentenced within the presumptive range. The fact that the trial court could have found aggravating factors and sentenced [the] defendant to the same term does not create an error in [the] defendant's sentence. We hold the statute is not ambiguous, and accordingly find no error.

*Id.* at 259, 576 S.E.2d at 721. Likewise, here, the fact that Defendant's sentence straddles the presumptive and aggravated ranges does not create any ambiguity, and the trial court did not err in imposing sentence. This argument borders on the frivolous and is overruled.

NO ERROR.

Judge HUNTER, JR., ROBERT N., concurs.

Judge STEELMAN concurs with a separate opinion.

STEELMAN, Judge concurring.

I fully concur with the majority opinion in this case. I write separately concerning the appellant's final argument. It is crystal clear from the judgment entered by the trial court that the sentence imposed was from the *presumptive range*.[2] As noted by the majority opinion, the argument made by counsel has been rejected by this Court on numerous prior occasions. This argument does not border on the frivolous; it is totally and completely frivolous. Defendant's counsel should be personally sanctioned pursuant to Rule 34(a)(3) of the North Carolina Rules of Appellate Procedure.

---

2. Judge Gessner's judgment stated that he made no written findings because the prison term was "within the presumptive range of sentences authorized under G.S. 15A-1340.17(c)." Defendant was found to be a prior record level V for felony sentencing. Based upon the version of N.C. Gen. Stat. § 15A-1340.17 that was in effect on the date defendant committed the offenses for which he was found guilty, a sentence of a minimum of 151 months and a maximum of 191 months imprisonment was a permitted sentence from the presumptive range.